188 So.2d 600

**Pride DAWSON**

v.

**STATE.**

**8 Div. 37.**

Court of Appeals of Alabama.

June 28, 1966.

See also ante p. 198, 186 So.2d 459, ante p. 254, 188 So.2d 283, 279 Ala. 686, 188 So.2d 285.

Jas. L. Hunt, Tuscumbia, for appellant.

Richmond M. Flowers, Atty. Gen., and John C. Tyson, III, Asst. Atty. Gen., for the State.

CATES, Judge.

This appeal was submitted January 27, 1966.

Dawson has appealed from a judgment of conviction after verdict on an indictment of assault with intent to murder. The court assessed his punishment at two years in the penitentiary.

I.

The defense offered only one witness, Grace Dawson, the defendant's wife. She was not an eyewitness to the assault made by her husband.

The State made out a prima facie case which, in the record, is undisputed.

Robert Dawson, a distant kinsman of the defendant, testified that one night in 1963 he was driving southerly on the Leighton-

Russellville road when he encountered the defendant, Pride Dawson, who was in a car parked askew the road.

Robert swung around the defendant's car. Whereupon Pride followed and rammed Robert's car so as to prevent him from making a right turn into his driveway. Robert went about a half a mile farther with Pride pursuing.

Robert drove into the driveway of an aunt. Pride went about half way in and jumped out shooting at Robert's car. In all he shot three times. One blast hit the left side of the car and another shattered the windshield.

Robert took to the woods. The defendant was arrested that night.

## II.

The defense did not (1) move to exclude the State's evidence; (2) request in writing the affirmative charge; nor (3) move for a new trial.

Hence, the trial judge was not called on to rule as a matter of law on whether there was insufficient evidence to go to the jury or to support the verdict. Nor can we review the question in vacuo.

## III.

In brief, counsel for appellant (who was not trial counsel) first contends that the court below erred in overruling (1) a motion for continuance, (2) challenges for cause, and (3) a motion for mistrial.

The basis to continue was that Dawson was a witness in a case tried the same week in which "very prejudicial testimony came out, and due to this testimony some very prejudicial statements were made in the Tri-Cities Daily, the paper has a wide circulation in Colbert County and we don't think he can have a fair trial."

The ruling came thus:

"BY THE COURT: Let the record show that Mr. Carmichael brought this up previous to this time in the case of Marvin D. Keeton, it was gone into. I think we have already excused all the jurors who sat in that case and heard the testimony. I OVERRULE THE MOTION AS MADE."

From page 15 of the record, we extract:

"MR. CARMICHAEL: The defendant, Pride Dawson, would like to know whether any member of the jury venire heard any testimony on the trial of Marvin D. Keeton, if so, please stand?

"Jurors Raymond L. Draper and John Edward Ligda stood.

"MR. CARMICHAEL: We would like to know for information purposes how many members of the venire read in the Tri-Cities Daily the story or the testimony that was written by the Tri-Cities Daily in regard to the Keeton trial, on (sic) other words, gentlemen, if you even read about the trial?

"Jurors Gilbert Mayer, Grant Azbell, Raymond L. Draper, Leslie L. Smith, Jr., John Edward Ligda, Clause S. Pounders, Woodrow W. Grissom, Emmett Hayes, Kenneth D. Bruton, Chester T. Thatcher, Bobby G. Yarbrough and Roy T. Collins, stood.

"MR. CARMICHAEL: We would like to ask those gentlemen that stood, if by what they heard and read in the paper in regard to the testimony given by Pride Dawson in the Keeton trial could they hear this case being tried against Pride Dawson today and bring back an impartial verdict?

"BY THE COURT: You heard the question, gentlemen, if you couldn't do so, please stand? If you couldn't bring back an impartial verdict stand and give your name, that is the ones who heard the testimony and read the newspapers?

"No one answered."

We find on record page 17:

"BY THE COURT: All right, there are nineteen strikes. It is the State's first strike.

"MR. CARMICHAEL: I want to make a motion and challenge for cause the list composed of Jurors, Mayer, Asbell, Draper, Smith, Ligda, Pounders, Grissom, Hayes, Bruton, Thatcher, Yarbrough and Collins, on the ground that they are members having read about the Keeton trial and read the testimony and read about certain testimony that came out in the trial, namely, about Pride Dawson, and we don't think he could get a fair and impartial trial by members of this venire, and we challenge them for cause.

"BY THE COURT: What says the State?

"MR. BEASLEY: They said they read the paper, but they also said that they were not prejudiced and that they could give an impartial verdict, and we object to that challenge for cause.

"BY THE COURT: Let the record show, please, that the Court heard the testimony in the case of the State of Alabama vs. Marvin D. Keeton, and it in no way involved the defendant, Pride Dawson, it didn't implicate him in any way with the case.. I OVERRULE THE MOTION.

"MR. CARMICHAEL: If it please the Court, we would like to show in the record that in the Marvin D. Keeton trial certain testimony came out in the trial in regards to Mr. Dawson's home, and this venire heard it, and at this time we make a motion for a mistrial in this case.

"BY THE COURT: I OVERRULE THE MOTION.

"Defendant reserves an exception."

■ The trial judge's statement "the Court heard the testimony in the case of the State of Alabama vs. Marvin D. Keeton, and it in no way involved the defendant, Pride Dawson" makes a prima facie burden rest on appellant. The trial judge's statement was the equivalent of taking judicial notice as an administrative device.

The court reporter's rendition of the motion to continue and the motion for mistrial probably suffice for the relief sought. Code 1940, T. 7, § 214, provides:

"§ 214. All motions, including motions of a new trial, which are made in writing in any circuit court or any court of like jurisdiction in any cause or proceeding at law, shall, upon an appeal become a part of the record; and the ruling of the court thereon shall also be made a part of the record, and it shall not be necessary for an exception to be reserved to any ruling of the court upon any such motion; and it shall constitute a part of the record proper on appeal."

However, the ground claimed was too conjectural to afford us any basis to say what was or was not in evidence in Keeton's trial. Hence, the trial judge's statement, whether strictly evidence or not, is uncontradicted.

There was no error in this ruling.

### IV.

The setting of the second claim of error came from the failure of the court to honor a belated challenge to the polls for cause (to the favor) against venireman Robert G. Cleveland because of a possible client-attorney relationship with Hon. Murray Beasley, County Solicitor.

Dawson contends that Cleveland should have stood when the following occurred on qualifying the panel for the strike list:

"MR. CARMICHAEL: We would also like to know if any members of the immediate families of the jury venire have ever been represented in any legal matter or in any manner whatsoever by Mr. Murray Whitman Beasley?

"BY THE COURT: You heard the question, gentlemen. If it applies to you, please stand and give your name?

"No one answered."

Next we find:

"BY THE COURT TO THE CLERK: Call them around, please.

"BY THE COURT TO VENIRE: As I call your names come around and take your seats in the jury box.

"(The Clerk called the names of twelve jurors and they are seated in the jury box.)

"BY THE COURT: Are you all satisfied with the Jury, please?

"MR. BEASLEY: Yes sir.
"MR. CARMICHAEL: Yes sir.

"BY THE COURT: The witnesses will come around and be sworn, please.

"MR. CARMICHAEL: I want to exclude the Jury, please, in order to make another Motion.

"BY THE COURT: All right.

"BY THE COURT TO THE JURY: Gentlemen, go with the Bailiff; Mr. Daniel, take the Jury out, please.

"(Jury leaves Courtroom and goes into Jury room adjacent to Courtroom.)

"BY THE COURT TO MR. CARMICHAEL: All right, sir, go ahead.

"MR. CARMICHAEL: I want to make a motion for a mistrial on the grounds that this jury was qualified and the defendant asked the members of this venire if they had ever been clients of Mr. Beasley, and I think at that time only one man stood up, Mr. Smith, and it has come to my attention that Mr. Beasley has a client on this jury that did not stand up.

"BY THE COURT TO MR. CARMICHAEL: What is his name, please?

"MR. CARMICHAEL: His name is Robert G. Cleveland.

"BY THE COURT: Let the record show that before the completion of the striking of the Jury Mr. Carmichael, Mr. Graham and Mr. Beasley were present at my bench and the question of Mr. Cleveland's name came up and Mr. Carmichael full well knew after he had been informed about this, he full well knew this when he still had two strikes.

"MR. CARMICHAEL: It was called to my attention during the striking of the jury that Mr. Cleveland had been a client of Mr. Beasley's and there were only two strikes left. I would also like to show that this question came up of clients on yesterday, and it was said at that time by Mr. Beasley about this man, that he only represented him during some 'Indian' affairs, or something like that.

"MR. BEASLEY: Let the record show that the last statement Mr. Carmichael made is not true, and that when we were up at the Judge's bench Mr. Carmichael made some motion or remark about Cleveland or something about the man being on the venire and I told the Court in the presence of Mr. Carmichael when he had two strikes left that the man, Mr. Cleveland, had never been in my office, his wife has been to my office and discussed some matters with me about ten years ago, whether or not he has knowledge of that, I don't know, I have never discussed any matter with Mr. Cleveland that was made known to Mr. Carmichael before his last two strikes.

"MR. CARMICHAEL: We would also like to make a motion that the Court question Mr. Cleveland as to whether he has ever been a client of Mr. Beasley.

"BY THE COURT TO MR. CARMICHAEL: You had ample notice of this matter. I understand, I assume Mr. Cleveland answered truthfully. I overrule the Objection and Motion.

"DEFENDANT RESERVES AN EXCEPTION.

"MR. CARMICHAEL: I now at this time make a motion for a mistrial.

"BY THE COURT TO MR. CAR-MICHAEL: Are you making a motion for a mistrial?

"MR. CARMICHAEL: Yes sir.

"BY THE COURT: MOTION OVER-RULED.

"DEFENDANT RESERVES AN EX-CEPTION."

■ In Beasley v. State, 39 Ala.App., 182, 96 So.2d 693, we noted that counsel owes the court the duty of apprising the court at the earliest practicable opportunity of an untruthful qualificatory answer by a prospective juror. There we held it was infeasible to establish a conviction involving moral turpitude by other than court records and the objection was hence not too late.

Here, however, while Mr. Carmichael seems to have raised the question promptly, yet no mention was made of when his informant recalled the relationship, or visit by some of the Clevelands to Mr. Beasley's office.

The venire facias in criminal causes—outside Jefferson County—is available soon enough to afford a reasonable chance of learning something about most jurors. From trial days, we know that the defense often hopes the State will inadvertently strike a "hanging" juror.

■ As a general rule, once striking a jury begins, a clear showing of probable prejudice together with a showing to excuse the failure to sooner disclose is as mandatory (to allow a challenge to the polls) as in case of letting a trial go to verdict. The principle of waiver works similarly.

■ Hence, here the information to challenge coming when only two strikes remain must overcome the suspicion that the defendant is finding it hard to get a jury to his specifications. Without some showing to explain the delay, this reason is suffi-cient to support the court's denial of a belated challenge.

Under this view, we forego discussion of the merits of whether Mr. Cleveland should have answered.

V.

■ During defendant's cross-examination of Robert Dawson, we find:

"Q. Did you know this night and prior to that night that people had been there knocking on the windows?

"THE STATE OBJECTS, IT IS ILLE-GAL AND IRRELEVANT.

"BY THE COURT: I AM GOING TO SUSTAIN THE OBJECTION UN-LESS YOU CAN CONNECT IT WITH THIS PARTICULAR TESTIMONY AND WHETHER HE WAS DOWN THERE.

"Q. Were you down there that night?

"A. No sir.

"Q. Were you down there any night before that?

"A. No sir.

"Q. You hadn't even been around his house?

"A. No sir.

"Q. Did you have knowledge that people had been around his house?

"THE STATE OBJECTS TO WHAT KIND OF KNOWLEDGE HE HAD.

"BY THE COURT: SUSTAINED UN-LESS IT IS CONNECTED WITH THIS WITNESS.

"DEFENDANT RESERVES AN EX-CEPTION."

Cross-examination is a thorough and sifting process which our statute confers on the opposing party.

Relevancy has a broad scope in criminal trials. In this instance, we see no error.

## VI.

A witness for the State, Deputy Sheriff McKinley Campbell, was asked on direct:

"Q. He wasn't what you'd call staggering drunk, was he?

"DEFENDANT OBJECTS, IT WAS TWO HOURS OR MORE SINCE THE SHOOTING TOOK PLACE, AND THE MAN COULD BE COLD SOBER BY THAT TIME.

"BY THE COURT: YES SIR, I REALIZE YOU RAISED THE QUESTION ABOUT HIM MAKING A STATEMENT, AND I THINK IT IS MATERIAL WHETHER HE WAS ABLE TO MAKE A STATEMENT. I OVERRULE THE OBJECTION.

"DEFENDANT EXCEPTS.

"A. He talked to us and walked out to the car and seemed to be polite and normal and answered our questions."

■ Whether the thrust of the State's line of questioning was as to Dawson's aggravating his offence by voluntary intoxication we do not know. This is a vague doctrine but clearly not pertinent in view of the answer last above quoted.

## VII.

Campbell was posed several hypothetical questions on cross about the effect of a 12-gauge shotgun thus:

"Q. I will ask you Mr. Campbell, could a man standing in that road, right where you cut in here and shoot two hundred and thirty-five feet—two hundred and twenty-five feet, I think you said seventy-five yards from the road to the house?

"A. Approximately.

"Q. And this car was down between the house and the barn, wasn't it?

"A. Yes sir.

"Q. I will ask you how many feet from the highway to where that car was parked?

"A. I don't believe I paid too much attention to know where it was in distance.

"Q. I will ask you Mr. Campbell if from your experience as an officer and your experience in operating guns, I will ask you, Mr. Campbell, could you take a twelve gauge shotgun and shoot, you said seventy-five yards, didn't you, and shoot from right there and hit that car down there?

"THE STATE OBJECTS, THAT INVADES THE PROVINCE OF THE JURY AND IT CALLS FOR A CONCLUSION ON THE PART OF THIS WITNESS.

"BY THE COURT: I SUSTAIN THE OBJECTION.

"Q. How far would you say, say that this is the road, how far would you say that car was, say from where you are sitting right here looking across the street over there—would you say it was as far as that new building you can see through the window? It is every bit that far, isn't it, would you say?

"(Witness looks at building indicated by Mr. Carmichael)

"A. Yes sir, I would say it was as far as that building.

"Q. I will ask you, Mr. Campbell, could you take a twelve gauge shotgun and from where you are riddle the windows, riddle the windows in the house?

"THE STATE OBJECTS, IT INVADES THE PROVINCE OF THE JURY, AND CALLS FOR AN ILLEGAL CONCLUSION.

"BY THE COURT: I SUSTAIN THE OBJECTION."

■ What Campbell could do, etc., with a shotgun is an insufficient hypothesization of the State's evidence as to the claimed shooting by Pride Dawson. Wilbanks v. State, 42 Ala.App. 39, 151 So.2d 741.

## VIII.

 Whether defendant Dawson, on former occasions, was seen to have hit a half dollar with a pistol was palpably beyond the issues as to what Dawson actually did or did not do on the night in question.

The use of a deadly weapon (here a shotgun) supplies evidence from which a jury is legally free to find the defendant has acted with malice. What he has done at some other time with a pistol fails to reproduce enough of the rational essentials to have shown that whenever Dawson shot he always could kill, and hence when he shot and did not kill he was only being playful or demonstrative.

## CONCLUSION

We have carefully reviewed the entire record and consider the judgment below is due to be

Affirmed.

JOHNSON, J., recuses self.

Richmond M. Flowers, Atty. Gen., and John C. Tyson, III, Asst. Atty. Gen., for the State.

