[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 1107 
Robbery; sentence: ten years imprisonment.
Fannie Thomas testified that around 2:45 A.M. on August 4, 1976, Arvil Strickland, the appellant's brother, entered the Majik Market on Highland Avenue in Montgomery where she worked as a cashier. She stated that Arvil Strickland robbed her at gunpoint, taking "a little over $300." The witness recognized the robber even though he was wearing a stocking mask. She said that he was the same man who had robbed her a few weeks earlier. Likewise, she identified Arvil Strickland at a police lineup held a few days after the robbery.
Betty McLain, a neighbor of the appellant, testified that the appellant was at her apartment until around 3:00 A.M., but she could not be absolutely certain of the time since she had no clock. She stated that the appellant left and then returned around 4:00 or 4:30 A.M. and asked if he could stay at her apartment the rest of the night. The next morning, Mike Martiss came by the apartment, and the appellant asked Martiss to go to the appellant's apartment and get his clothes. She said Martiss and the appellant then left together.
Russell Harris testified that he was a taxi driver on the night in question. He stated that at 3:53 A.M., he received a call to pick up someone at the Holiday Inn Midtown in Montgomery. He stated that he picked up the appellant around 4:00 A.M. and took him to the address of Betty McLain. He said the appellant was barefooted and breathing heavily, but he could not say whether the appellant was intoxicated.
The State called Officer G.E. Murphy to testify, however, the appellant moved to suppress the testimony of Officer Murphy as it would relate to identification. He filed a written motion to suppress the testimony setting out the following grounds:
 "1. That the said G.E. Murphy was a police officer employed by the City of Montgomery, and he participated in the investigation of a robbery which occurred on or about August 4, 1976, at the Magic (sic) Market at 2710 Highland Avenue in Montgomery, Alabama —
 "2. That the circumstances under which this witness identified this defendant were impermissibly suggestive.
 "3. That this witness did not have opportunity to view the defendant at the scene of the crime so as to later make identification based on independent origin.
 "4. That to permit this witness to make an in-court identification of the defendant would be a violation of due process of law.
 "5. That to permit any testimony concerning pre-trial identification would be a violation of the Fifth, Sixth, and Fourteenth Amendments to the Constitution of the United States."
The trial court overruled the motion and Officer Murphy was allowed to testify. He stated that he and his partner were patrolling past the scene of the crime on the date and time of the robbery and saw a man come out of the store with a gun and a bag in his hand. He said the robber pointed the gun at the officers, but it did not fire, and he dropped it and ran toward a fence adjacent to the store. The robber apparently picked the gun up and pointed it a second *Page 1108 
time, but it did not fire. He then pulled off a stocking mask and a wig, jumped the fence, and ran behind the building. The witness fired four shots at him. Moments later, a Chevrolet automobile came out from behind the building and sped away.
Officer Murphy said the appellant was seated in the right rear seat of the automobile. He got a clear view of the appellant, though only for a few seconds. Murphy said his partner shot at the car as it passed them and that they chased it for some blocks in their patrol car. The car stopped and the occupants got out and ran. None of the occupants of the car were arrested at the scene.
Officer Murphy was subjected to extensive and searching cross-examination on his identity of the appellant and on his opportunity to view and recognize the appellant at the scene of the crime. He positively identified the appellant without any equivocation.
Detective Cecil Humphrey testified that the appellant was arrested between 4:00 and 5:00 P.M. the same day. He was found hiding in a bedroom closet in the Martiss home. A pistol found in the closet at that time was introduced into evidence over objection. Fannie Thomas had previously identified the pistol as being similar to the one used by the robber. A paper sack with assorted change was also found on a dresser in the same bedroom where appellant was arrested. Appellant's brother, Arvil Strickland, who was in the house at that time, had what appeared to be a fresh gunshot wound in his neck.
The State rested its case in chief at which time the appellant moved to exclude the State's evidence on the grounds that (1) the State failed to make a prima facie case, (2) the State failed to connect the appellant with the crime, and (3) no evidence showed that the appellant was either involved in planning or executing the crime. The trial court overruled the motion to exclude, and the defense presented its evidence.
The appellant testified that on the date in question, there was a birthday party for him at Betty McLain's apartment. He left there around 8:00 or 9:00 P.M. and returned around midnight. Leroy Smoke and the appellant's brother, Arvil Strickland, came by and all three left in Smoke's car to buy some beer. Appellant said he went to sleep in the back seat of the car and awoke when gunfire erupted and knocked the back window out of the car. He said that he raised up to try to pull his brother down, that the car stopped and that he ran from the scene, ending up at the Holiday Inn Midtown where he called a taxi. He stated that he had no prior knowledge of the robbery and did not participate in it.
Officer Murphy was recalled and stated that the back window of the automobile was not shot out. Detective Humphrey of the Montgomery Police Department testified in contradiction of part of the appellant's testimony. He stated that shortly after the appellant's arrest, the appellant stated to him that he was at Betty McLain's apartment all night and knew nothing about the robbery.
The case was submitted to the jury and after lengthy deliberation, the jury announced that it was deadlocked. The trial court then instructed the jury, in pertinent part as follows:
 "Now, ladies and gentlemen of the jury, by authority of the Supreme Court of Alabama, which has been affirmed by the United States Court of Civil Appeals, I'm authorized to say this to you; and I want you to listen, please. I'm privileged to say this to you under those authorities. "It is desirable and important that you agree upon a verdict, and you are urged to make every effort to do so consistent with your conscience. You are advised to lay aside mere pride of judgment and not to adhere to an opinion regardless of what the other jurors may say merely through contumacies, but you should examine any existing differences in a spirit of fairness and candor and to reason together and to talk over such differences and harmonize them if this is possible.
 "You are further urged as reason for reaching a verdict to consider the time and expense involved in this trial. The *Page 1109 
taxpayers have an interest in this. You should not and will not be censored for not agreeing with the majority. If you can reach a verdict without any sacrifice of principle or conviction, the court and the taxpayers would be very glad for you to do so.
 "Now, do you want to deliberate anymore this afternoon? If not, I'm going to let you go until in the morning at 9:00 o'clock. Be back at 9:00 o'clock, please. . . ."
The jury returned the next morning and were instructed to go into the jury room but not deliberate until told by the court to do so. Then outside the presence of the jury, counsel for appellant stated, "Your Honor, at this time the Defendant would like to object respectfully, of course, to the charge that the court gave to the jury yesterday afternoon." The trial judge informed the appellant's counsel that he should have objected at the time so that the court could have corrected the instruction if it was wrong. Counsel for appellant pointed out that the jury had not begun its deliberations yet that morning and that he objected to the court giving the "Allen charge." The trial court refused to recall the jury and instruct them further, and the appellant took an exception.
 I
Appellant's motion to exclude the State's evidence on the ground that it failed to make out a prima facie case of robbery against the appellant was properly overruled. The testimony of Fannie Thomas, Officer Murphy and Detective Humphrey was sufficient to establish a prima facie case against the appellant and to prove the three essential elements of common-law robbery: (1) felonious intent, (2) force, or putting in fear as a means of effectuating the intent, and (3) by that means, taking and carrying away the personal property of another from his person or in his presence, all elements concurring in point of time. Moore v. State, Ala.Cr.App.,331 So.2d 422 (1976).
The appellant's presence at the scene of the crime in the get-away car; his flight from the police; his hiding in the closet where a gun similar to that used by the robber was likewise hidden; and his subsequent arrest with the person identified as the actual robber in the bedroom where some of the fruits of the crime were found, are all circumstances from which the jury could reasonably infer that the appellant was an accomplice in the robbery. As an accomplice, his guilt would therefore be the same as if he had actually held the gun on the victim and had taken the money. Title 14, § 14, Code of Alabama 1940.
 II
Appellant's motion to suppress Officer Murphy's testimony as to the identity of the appellant at the scene of the crime is not based upon a claim of a suggestive lineup for improper identification procedure which we usually see on appeal. Rather, appellant claims that Officer Murphy did not have a sufficient opportunity to observe the fleeing robbers to enable him to make a valid in-court identification of the appellant.
When Officer Murphy was called as a witness, the appellant called his motion to suppress to the attention of the court and requested that the State be required to defend against the motion. Appellant requested that the State put on its identification evidence and allow the defense to cross-examine the State's witnesses and to call defense witnesses, all outside the presence of the jury. The trial court overruled the motion to suppress, and the testimony resumed in the presence of the jury.
We consider the trial court's action in this regard to be correct. The weight and credibility of testimony is for the jury to consider. Felton v. State, 47 Ala. App. 182,252 So.2d 108 (1971). No question of law for the judge's consideration was raised by the motion. Testimony on certain motions should be initially heard outside the presence of the jury, such as a motion challenging the legal sufficiency of a search warrant, or challenging the voluntariness *Page 1110 
of a confession. However, we are not concerned with such a motion here. It is elementary that questions of law are reserved to the judge, but questions of fact are for the jury to consider. Had the trial judge passed upon the weight and credibility of the proposed testimony prior to letting the jury hear it, then he would have been invading the province of the jury. If a trial judge must hear the testimony of each witnessin camera, where the weight and credibility of the expected testimony is challenged, then trials would become endless affairs. The already slow wheels of justice would grind almost to a standstill.
Here, Officer Murphy's testimony was properly presented to the jury. They could determine whether or not he had sufficient opportunity to observe the appellant. They could weigh his answers on direct examination against his answers on cross-examination. We have repeatedly held that it is the sole province of the jury to determine what credence should be given to testimony of witnesses going to the identity of an accused.Colston v. State, 57 Ala. App. 4, 325 So.2d 520, cert. denied295 Ala. 398, 325 So.2d 531 (1975); McCay v. State, 51 Ala. App. 307, 285 So.2d 117, cert. denied 291 Ala. 788, 285 So.2d 122
(1973); Gray v. State, 38 Ala. App. 508, 88 So.2d 798 (1956).
We have likewise held that questions concerning lighting conditions and the length of time in which a witness had an opportunity to observe an accused and make a valid identification were matters for the jury. Redmon v. State,47 Ala. App. 421, 255 So.2d 604 (1971).
 III
Appellant contends that the trial court erred in admitting the gun into evidence. We disagree. Fannie Thomas identified the weapon as being similar to the one used in the robbery. The weapon was found hidden in the same closet in which the appellant was hiding at the time of his arrest. This was a relevant circumstance for the jury to consider along with other evidence presented. 22A C.J.S. Criminal Law § 611.
The photograph objected to was likewise of sufficient relevance to support its admission into evidence. In McKee v.State, 253 Ala. 235, 44 So.2d 781 (1950), the Supreme Court of Alabama stated:
 ". . . courts in this country take judicial knowledge that the art of photography is generally relied on for depicting the resemblance of persons, objects, things and places and when verified by evidence, extrinsic of the photographs, going to show that they correctly depict the thing or object at the time they were taken, photographs are admissible in evidence in a criminal prosecution, if they tend to shed light on, strengthen or illustrate the truth of other testimony offered by the prosecution. . . ."
The photograph objected to was first authenticated as a true representation of what it portrayed at the time it was taken. It was a photograph showing a paper bag of assorted coins on the dresser in the room where, and at the time, appellant was arrested. It therefore tended to shed light on or illustrate the testimony previously given by Detective Humphrey that he found such a bag of coins on the dresser in the bedroom. We find the photograph to be relevant, and its admission therefore did not constitute prejudicial error. The determination of relevancy in a criminal trial rests largely within the trial court's sound discretion. Bryant v. State, 49 Ala. App. 359,272 So.2d 286, cert. denied 289 Ala. 740, 272 So.2d 297, cert. denied 412 U.S. 922, 93 S.Ct. 2744, 37 L.Ed.2d 149 (1972). "Relevancy has a broad scope in criminal trials." Dawson v.State, 43 Ala. App. 265, 188 So.2d 600 (1966).
 IV
Appellant contends that the trial court erred in overruling his exception to giving the "Allen" charge to the jury.
Although the jury had not resumed its deliberations when appellant excepted to the "Allen" or "dynamite" charge, the jury had retired from the courtroom the previous night. The trial judge could have recalled *Page 1111 
the jury to the courtroom, heard the exception to his charge, and made any correction he felt necessary. While the trial court could have done so, his refusal to do so did not constitute reversible error.
The appellant should have excepted to the trial court's oral charge the previous night, before the jury retired. By waiting until the next morning to except when the jury was in the jury room (although not yet deliberating) appellant could not then put the court in error. Technically, the exception to the trial court's oral charge must have been made at the time the charge was given, and in the presence of the jury before it retiredfrom the courtroom. Owens v. State, 53 Ala. App. 553,302 So.2d 240, cert. denied 293 Ala. 769, 302 So.2d 243 (1974). For a multitude of cases on this point, see 6A Alabama Digest, Criminal Law, 841.
Even had the appellant's exception been timely, the "Allen"
charge has been approved in this State.
The practice of giving supplementary instructions to a jury was approved by the United States Supreme Court in UnitedStates v. Allis, 155 U.S. 117, 15 S.Ct. 36, 39 L.Ed. 91 (1894). The most notorious supplementary instruction, although used in various forms, is summarized in Allen v. United States,164 U.S. 492, 17 S.Ct. 154, 41 L.Ed. 528 (1896) as follows:
 ". . . in a large proportion of cases absolute certainty could not be expected; that, although the verdict must be the verdict of each individual juror, and not a mere acquiescence in the conclusion of his fellows, yet they should examine the question submitted with candor, and with a proper regard and deference to the opinions of each other; that it was their duty to decide the case if they could conscientiously do so; that they should listen, with a disposition to be convinced, to each other's arguments; that, if much the larger number were for conviction, a dissenting juror should consider whether his doubt was a reasonable one which made no impression upon the minds of so many men, equally honest, equally intelligent with himself. If, upon the other hand, the majority were for acquittal, the minority ought to ask themselves whether they might not reasonably doubt the correctness of a judgment which was not concurred in by the majority. . . ."
The Allen-type charge has been so controversial that the modern trend is to do away with its use. For discussion pro and con, see: United States v. Silvern, 484 F.2d 879 (7th Cir. 1973); United States v. Thomas, 146 U.S.App.D.C. 101,449 F.2d 1177 (1971); United States v. Brown, 411 F.2d 930 (7th Cir. 1969). That charge has fallen into disfavor in many jurisdictions because it is considered to be basically unfair to a defendant and because it brings about a proliferation of appeals.
A different approach than the Allen charge to the problem of giving supplemental instructions to a deadlocked jury is found in the American Bar Association's Standards Relating to theAdministration of Criminal Justice. Standards Relating to the Function of the Trial Judge, § 5.12 (b) states:
 "In dealing with what appears to be a deadlocked jury, the trial judge should avoid instructions which imply that a majority view is the correct one, by complying with ABA Standards, Trial by Jury § 5.4."
Standards Relating to Trial by Jury, § 5.4, reads:
 "(a) Before the jury retires for deliberation, the court may give an instruction which informs the jury:
 "(i) that in order to return a verdict, each juror must agree thereto;
 "(ii) that jurors have a duty to consult with one another and to deliberate with a view to reaching an agreement, if it can be done without violence to individual judgment;
 "(iii) that each juror must decide the case for himself, but only after an impartial consideration of the evidence with his fellow jurors;
 "(iv) that in the course of deliberations, a juror should not hesitate to reexamine his *Page 1112 
own views and change his opinion if convinced it is erroneous; and
 "(v) that no juror should surrender his honest conviction as to the weight or effect of the evidence solely because of the opinion of his fellow jurors, or for the mere purpose of returning a verdict.
 "(b) If it appears to the court that the jury has been unable to agree, the court may require the jury to continue their deliberations and may give or repeat an instruction as provided in subsection (a). The court shall not require or threaten to require the jury to deliberate for an unreasonable length of time or for unreasonable intervals.
 "(c) The jury may be discharged without having agreed upon a verdict if it appears that there is no reasonable probability of agreement."
By using the ABA form for supplementary instructions, the trial judge would not mention the costs of the trial to the jury. Since a juror should base his opinion upon the evidence presented during the trial, the expense of a new trial would be an irrelevant factor for a juror to consider in reaching a verdict. Likewise, a juror should not change his honest opinion because of an opinion held by a fellow juror or jurors.
In Alabama, the trial judge may urge the jury to resume deliberations and to reach a verdict so long as the court does not use duress or coercion in doing so. Holladay v. State,20 Ala. App. 76, 101 So. 86 (1924); Bufkins v. State, 20 Ala. App. 457,103 So. 902 (1924). Threatening a jury with contempt for failure to return a verdict constitutes reversible error.Meadows v. State, 182 Ala. 51, 62 So. 737 (1913). Emphasizing the public expense of the trial, stating that the court expects a verdict, stating that the taxpayers also expect a verdict, and referring to the failure to return a verdict as "an exhibition of obstinancy," resulted in a reversal in Orr v.State, 40 Ala. App. 45, 111 So.2d 627, affirmed 269 Ala. 176,111 So.2d 639 (1959).
The Supreme Court in Ashford v. McKee, 183 Ala. 620, 638,62 So. 879 (1913) stated:
 ". . . `The trial judge is vested with large discretion in the conduct of judicial proceedings, and he may properly admonish the jury as to the desirability and importance of agreeing on a verdict, and may urge them to make every effort to do so consistent with their consciences. He may advise jurors to lay aside mere pride of judgment, and not to adhere to an opinion regardless of what the other jurors may say, merely through stubbornness, to examine any existing difference in a spirit of fairness and candor, and to reason together and talk over such differences and harmonize them, if possible. So, also the court may urge as reasons for agreeing on a verdict the time and expense which a new trial would entail. But it is not proper to give an instruction censuring jurors for not agreeing with the majority.'"
See also: Poellnitz v. State, 48 Ala. App. 196, 263 So.2d 181
(1972).
In MacSwafford v. State, 46 Ala. App. 187, 239 So.2d 329
(1970) it was not error for the trial judge to urge the jury to reach a verdict, stating inter alia: "It costs the county money to have a jury; and, as I say some jury has to determine the case one way or the other. . . ."
In a footnote in Eady v. State, 48 Ala. App. 726, at 729,267 So.2d 516, at 518 (1972), Judge Harris aptly stated this court's view of the charge in question:
 "If the `Allen' or `dynamite' charge was being presented to this court for the first time, and we were not bound by the decisions of our Supreme Court, I would welcome the opportunity to sound the death knell to this type of charge now and forevermore. . . ."
Judge Harris stated that one of the most chilling experiences in a trial lawyer's life is to sit helplessly and listen to the trial judge give the "Allen" or "dynamite" charge to the jury. After condemning the charge as an intrusion by the judge into the exclusive province of the jury as a fact-finding body, he recognized that the same elements of the charge herein complained of were approved by the Alabama Supreme Court inAshford *Page 1113 v. McKee, supra. We likewise recognize that we are bound by the decisions of the Alabama Supreme Court. Therefore, if the time has come for the "Allen" charge to be buried, the Alabama Supreme Court must perform that final rite rather than this Court.
AFFIRMED.
All the Judges concur.