TYSON, Judge.
Michael Rider Jackson was indicted by the Mobile County Grand Jury for the offense of rape. Following a trial, the jury returned a verdict of “guilty of rape as charged in the indictment.” The trial court set punishment at twenty-eight years imprisonment in the penitentiary.
The record indicates this offense occurred on the morning of March 29, 1979, at the home of the prosecutrix, a nine year old child. She and her thirteen year old brother, Jimmy, were staying home from school that day because of sickness.
A man, later identified as the appellant, appeared at the prosecutrix’s house that morning inquiring whether he could clean the carpets in the house and whether the prosecutrix’s parents were home. The pros-ecutrix stated her parents were not home and that she would have to check with Jimmy about having the carpets cleaned. The appellant then asked to use the telephone to call his boss. When the prosecu-trix returned with Jimmy, the appellant was pretending to use the phone when he suddenly pulled out a pistol. The appellant grabbed Jimmy, slapped him, and told them both to lie on the floor. Jimmy lay on his stomach. The appellant told Jimmy he would kill him if he looked up.
The appellant proceeded to take all of the prosecutrix’s clothes off and took off his pants and underpants. The appellant said “some cuss words” and threatened to hurt the prosecutrix. The prosecutrix then testified to the following:
“Q Now, after he took his pants off and his underpants off did you then see that part of his body that is different than yours?
A Sort of.
Q Let me ask you this, Allie, do you know if he took part of his body and put it inside your body?
A Yes.” (R.p. 137-138)
The prosecutrix testified the appellant was hurting her, she was bleeding, and she began to scream and yell. The appellant mouthed more cuss words and told Jimmy to make the prosecutrix “shut up.” The appellant then got up, went into a bedroom, came out, wiped the prosecutrix with a wash cloth, and “done (sic) it again.” Jimmy testified he could hear his sister screaming and moaning again but could not tell what the appellant was doing to her. When the appellant finished he told Jimmy that if anyone was told of this incident he would kill the prosecutrix. Jimmy testified he saw that his sister was bleeding in the area below the stomach.
The prosecutrix made an in-court identification of the appellant as the man who forcibly ravished her. In addition, she testified to picking the appellant’s picture from several pictures shown to her by the police as “The man that raped me.” Jimmy also made an in-court identification of the appellant as the culprit.
The appellant denied committing the offense. The evidence for the appellant attempted to establish an alibi. When there is a conflict between the State’s case and the appellant’s alibi a jury question is presented. Crow v. State, Ala.Cr.App., 365 So.2d 1254, cert. den., Ala., 365 So.2d 1256 (1979).
I
At the conclusion of the State’s evidence the appellant made a motion to exclude the *673 evidence on the ground that penetration was not proven. He contends error from the denial of this motion.
An essential element of the offense of rape is an actual penetration of the female sex organ by the male sex organ. Reynolds v. State, 274 Ala. 171, 146 So.2d 85 (1962). “[Pjenetration to any particular extent is not required, . . . but some degree of entrance of the male organ within the labia pudendum is essential.” Harris v. State, Ala.Cr.App., 333 So.2d 871 (1976). The question of whether such penetration is accomplished is a factual determination for the jury. Long v. State, Ala.Cr.App., 370 So.2d 354 (1979).
From the testimony of the prosecu-trix we find the following:
“Q Now, after he took his pants off and his underpants off did you then see that part of his body that is different than yours?
A Sort of.
Q Let me ask you this, Allie, do you know if he took part of his body and put it inside your body?
A Yes.
Q And when the man did that did it hurt you?
A Yes.”

Q After the man put that part of his body into your body were you hurt at all?
A Yes.
Q Were you bleeding?
A Yes.
Q Now, after this happened what happened next?
A He went back in the bedroom and he came out and done it again.
Q Now, while he was gone did you stay in here?
A Yes.
Q So all you know is he went back into this part of the house?
A Yes and got a washcloth and wiped me.
Q Did he wipe you off with a cloth?
A Yes.
Q Okay, and then you say he did it again?
A Yes.
Q And by doing it again you mean that he took part of his body and put it in your body?
A Yes.
Q Did he hurt you a second time?
A Yes.” (R.p. 137-139)
As previously pointed out in this opinion, the prosecutrix specifically testified that the appellant was “The man that raped me.”
The State’s expert witness, Alilee Pill-man, Director of the Mobile Police Department Crime Laboratory, testified she performed several experiments and tests on evidence recovered from the crime scene. Her examination of a pair of panties disclosed the presence of large blood clots and semen stains. An examination of a washcloth also revealed the presence of semen stains and blood stains.
Dr. William Pasley, an obstetrician-gynecologist, testified he examined the prosecu-trix on the afternoon of March 29, 1979. She was experiencing vaginal bleeding at the time of the examination. Her injuries included a second degree perineal tear and a second degree vaginal tear. He explained these injuries as follows:
“And by second degree perineal tear I mean that the area between the posterior aspect of the vagina and the anus, that area between the vagina and the anus, there was a tear there. And by second degree, it was torn through the skin into the muscle.”

“And by a second degree (vaginal tear) I mean that the tear extended through the skin of the vagina into the muscle of the vagina and the tear started out at the vaginal introitus, which is the opening to the vagina, went up the left lateral sidewall of the vagina, up to the top on the left, extended past the top of the vagina into the left broad ligament.” (R.p. 165)
*674 At the conclusion of the State’s direct examination of Dr. Pasley, the following occurred:
“Q Could you say that this particular penetration was the product of force?
A I don’t see how the patient could undergo these tears without force.” (R.p. 168)
A review of the facts clearly indicates that the jury in the instant case could reasonably infer that there had been a penile penetration.
II
A preliminary hearing was held for this case on Monday, April 30,1979. On the Friday before the hearing the district attorney took the prosecutrix and her family into the District Courtroom where preliminary hearings are held to familiarize the prosecutrix with the surroundings. The district attorney placed the prosecutrix in the witness chair and explained to her the procedures of a trial. He pointed out to her where the judge would-be sitting, that several people would be sitting at the tables in the courtroom, and the approximate area where the appellant would be sitting at those tables. From the record:
Cross-examination of the prosecutrix by the defense attorney.
“Q All right. And did not Mr. Galanos tell you that the man who raped you or did that to you was going to be sitting in a certain chair or one of two chairs in the courtroom?
A Yes.

Q All right, and when you came into the courtroom Michael Jackson was standing behind one of those chairs rather than sitting in it, is that correct?
A Yes.

Q ‘All right, did he tell you anything about where the man would stand or anything like that?’

Q ‘No, sir, we came over here yesterday at Friday and we practiced and Chris said he might be sitting over in those two chairs over there.’ ” (R.p. 142, 146-147)
The district attorney also explained to the prosecutrix that she would be asked questions and that she must answer those questions truthfully.[1]
The appellant’s attorney made no objection to the prosecutrix’s in-court identification of the appellant at the preliminary hearing nor did he make any pre-trial motions or objections to the in-court identification.
During the trial of this case the prosecu-trix was called as the first witness. An examination was conducted to determine her competency as a witness. Just as the trial court was about to rule on her competency to testify the appellant’s attorney requested that he be allowed to conduct a voir dire examination of the prosecutrix and other witnesses out of the jury’s presence. The examination was to determine if the prosecutrix’s expected in-court identification of the appellant would be the result of the district attorney’s influence in the courtroom prior to the preliminary hearing. The appellant’s attorney stated in the alternative he would attack the prosecutrix’s credibility if he was denied the admissibility objection. The trial court denied the request stating that he would not disrupt the trial at this time but that he would allow him to challenge the weight and credibility of her testimony on cross-examination or on defense.
We believe the trial court’s ruling to be correct for several reasons. First, we find nothing wrong with the prosecutrix being taken into the courtroom prior to preliminary hearing to familiarize her with the surroundings and proceedings of court. It is natural for a child of tender years who has been subjected to a sex offensé to be frightened and under emotional stress. See: Veith v. State, 48 Ala.App. 688, 267 So.2d 480 (1972). The fact that the prose-cutrix must relive this horrible experience *675 at trial must be equally frightening and stressful. We believe any reasonable means employed to make the prosecutrix as comfortable as possible without suggesting to the prosecutrix what her testimony should be would be proper legal procedure.
Second, the trial court correctly submitted the weight and credibility of the prosecutrix’s testimony to the jury for their consideration. Strickland v. State, Ala.Cr.App., 348 So.2d 1105, cert. denied, Ala., 348 So.2d 1113 (1977). The request to voir dire the prosecutrix as to whether her in-court identification of appellant was influenced by the district attorney did not raise a legal question. It was a factual determination. As stated in Strickland, 348 So.2d at 1110:
“Had the trial judge passed upon the weight and credibility of the proposed testimony prior to letting the jury hear it, then he would have been invading the province of the jury. If a trial judge must hear the testimony of each witness in camera, where the weight and credibility of the expected testimony is challenged, then trials would become endless affairs. The already slow wheels of justice would grind almost to a standstill.”
The trial court gave the appellant ample opportunity to challenge the weight and credibility of the prosecutrix’s testimony through cross-examination. He also was allowed the opportunity to bring it up at the defense portion of the trial.
Finally, even without the prosecutrix’s in-court identification there was other evidence sufficient to identify the appellant as the guilty party. The prosecutrix picked the appellant’s picture from a picture spread shown to her by the police before she went to the preliminary hearing. The prosecutrix’s brother identified the appellant’s picture from five photographs shown to him by Detective Sergeant James Gill of the Mobile Police Department the day after the incident and before the prosecutrix made her picture identification of appellant.
In addition, Miss Cindy Stickey[2], a next door neighbor to the prosecutrix, testified that the appellant appeared at her house at approximately 7:30 a. m. on the day of this incident and attempted to gain entry to her house as a carpet cleaner serviceman. When she realized he had no uniform and no equipment she slammed the door in his face. Miss Stickey did not learn that the prosecutrix had been raped that morning until she returned home' from work that afternoon. She immediately contacted the police and gave them a description of the person who appeared at her house that morning. She also helped draw a composite of the culprit. Her description of the clothes the man was wearing was corroborated by several witnesses for the State who had seen and talked with the appellant at Shotgun Willie’s nightclub during the early morning hours of March 29, 1979. Although she could not positively identify the appellant in a picture spread or in a line-up, she was unwaivering in her in-court identification of the appellant.
For the reasons set out above this case is due to be and is hereby affirmed.
AFFIRMED.
All the Judges concur as to Part I.
HARRIS, P. J., and DeCARLO and BOOKOUT, JJ., concur as to Part II.
BOWEN, J., concurs in result only of Part II.

. All of the above-mentioned was made known at the preliminary hearing.

. At the conclusion of her testimony, Miss Cindy Stickey was referred to as Mrs. Cindy Eddy throughout the remainder of the transcript without explanation.