HUBERT TAYLOR, Judge.
Bobbie Jean Carter was tried and convicted for the capital murder of John Doyle Pennington by shooting him with a pistol, during the course of a robbery, in violation of § 13A-5-31(a)(2), Code of Alabama 1975. After a separate sentencing hearing for consideration of aggravating and mitigating circumstances, the jury fixed his punishment at life imprisonment without parole. In accordance with the jury’s verdict, the trial court sentenced the appellant to life imprisonment without parole.
On December 19, 1980, two armed men entered George’s Grocery in Birmingham, Alabama, shot and killed one of the owners, John Doyle Pennington, and took cash, totaling over $2,700, from Mr. Pennington and the store cash registers. The appellant, Bobbie Jean Carter, was later identified by two eye-witnesses as the gunman who shot and killed Mr. Pennington during the robbery.
The appellant presented an alibi defense. He testified that at the time of the robbery-murder he was at his girlfriend’s home. His girlfriend, Barbara Player, and her friend, Sonya Winborn, testified that they were with the appellant for most of the day except for a period between 3:00 and 5:10 p.m., when they left the appellant at Player’s home while they went to the laundromat. Player testified that, although she was not with the appellant between 3:00 and 5:10 p.m., she did call her home during that period and talk with him on the telephone.
In light of this alibi testimony, the jury found the appellant “guilty of the capital offense as charged in the indictment.”
I
During its cross-examination of the appellant, the prosecution asked him if he had related his alibi to the investigating police officers. The appellant answered “yes,” that he had given his alibi information to the police after his arrest. Over appellant’s objection, the state was allowed to pursue this issue with the appellant and was later allowed to impeach the appellant with Sergeant Gaut’s testimony that the appellant never told the police investigators about his alibi.
The appellant argues that the trial court erred to reversal in permitting this line of questioning. He contends that, in accordance with the Miranda warnings, he had a right to remain silent at the time of arrest and the state should not have been allowed to use such silence against him at trial.
The general rule in this regard was stated in Houston v. State, 354 So.2d 825 (Ala.Cr.App.1977), cert. denied, 354 So.2d 829 (Ala.1978), as follows:
“Not only is the prosecutor forbidden to use as evidence of substantive guilt the fact of defendant’s silence following his arrest and Miranda warnings but the state may not constitutionally impeach a defendant’s trial testimony with proof of post-arrest silence. Doyle v. Ohio, 426 U.S. 610, 96 S.Ct. 2240, 2244, 49 L.Ed.2d 91 (1976).”
See also, Dickey v. State, 390 So.2d 1177 (Ala.Cr.App.), cert. denied, 390 So.2d 1178 (Ala.1980).
The state asks us to distinguish the instant case from Houston and Doyle v. Ohio, 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976), because there was no evidence in the record that the appellant was even given the Miranda warnings. See, Fletcher v. Weir, 455 U.S. 603, 102 S.Ct. 1309, 71 L.Ed.2d 490 (1982). The state’s argument is unfounded and its reliance on Fletcher v. Weir is totally misleading because there is evidence in the record that the appellant was informed of his Miranda rights several times after his arrest.
However, the appellant’s reliance on Houston v. State, supra, and Doyle v. Ohio, supra, is unwarranted. In Houston the state made several comments about the defendant’s post-arrest silence and introduced, through the testimony of its own witness, the fact that the defendant refused to make a statement after his arrest. In Doyle, the prosecutor, during cross-examination, forced the defendant to admit that *152 he had not told his exculpatory story to the police after his arrest. Under those circumstances the reviewing courts found reversible error, in accordance with the general rule prohibiting evidence of post-arrest silence.
The circumstances of the instant case are materially different from those in Houston and Doyle. The appellant presented three alibi witnesses and then, in his own behalf, confirmed his alibi, that he was at his girlfriend’s apartment when the instant offense was committed. The state, through vigorous cross-examination of the appellant, forced him to re-state his alibi with a bit more detail. At the conclusion of this re-statement the following exchange took place (R. 640):
“Q Did you ever tell Sergeant W.T. Gaut that [the alibi story] ... ?
“A Yes, I did.
“MR. DAWSON [Appellant’s attorney]: Judge, I would object to that.”
After a discussion that followed and some voir dire testimony from the appellant concerning his alleged post-arrest statements to Gaut, the trial court overruled the appellant’s objection, permitted, in the presence of the jury, some additional questioning of the appellant, concerning the circumstances surrounding the statements he, allegedly, made to Gaut, and permitted Gaut to testify in rebuttal that the appellant never disclosed his alibi story to Gaut.
Quite clearly, the triggering question on the issue of appellant’s post-arrest behavior was the state’s inquiry (quoted above) as to whether or not the appellant told Sergeant W.T. Gaut about his alibi. This question, by itself, was not erroneous because it did not infer post-arrest silence. See, Dickey v. State, supra; See also, Monroe v. State, 396 So.2d 241 (Fla.App.1981). Then, before any objection was made by his attorney, the appellant stated that he had, indeed, told Gaut about his alibi. We need not speculate as to how the trial court would have ruled, had appellant’s attorney interposed an objection before the appellant answered. The fact is that the appellant was not forced to admit post-arrest silence. Instead, he claimed that he told his exculpatory story to the police.
Under these circumstances, the instant case falls within an exception to the “post-arrest silence” rule quoted above from Houston v. State. The exception was stated as footnote 11 in Doyle v. Ohio, 426 U.S. 610, 619, 96 S.Ct. 2240, 2245, 49 L.Ed.2d 91 (1976), as follows:
“It goes almost without saying that the fact of post-arrest silence could be used by the prosecution to contradict a defendant who testifies to an exculpatory version of events and claims to have told the police the same version upon arrest. In that situation the fact of earlier silence would not be used to impeach the exculpatory story, but rather to challenge the defendant’s testimony as to his behavior following arrest. Cf. United States v. Fairchild, 505 F.2d 1378, 1383 (CA5 1975).” (Emphasis supplied.)
The appellant’s claim that he told the alibi story to Sgt. W.T. Gaut after his arrest invited impeachment by the state. Consequently, we find no error by the trial court as regards this post-arrest silence issue. See also, United States v. Quintana-Gomez, 488 F.2d 1246, 1248 (5th Cir.1974); and United States v. Fairchild, 505 F.2d 1378 (5th Cir.1975).
II
The appellant was positively identified by Mrs. Pennington and Johnny Payne as one of the perpetrators of the instant offense. Mrs. Pennington identified the appellant in a photographic line-up, in a live line-up, and from the witness stand at trial, and testified that the appellant was the triggerman, the robber who shot and killed her husband. Johnny Payne identified the appellant in a live line-up and from the witness stand at trial.
At trial the appellant moved to suppress the pre-trial identifications and raised timely objections to prevent the identifications in court. The appellant argues that all of these identifications were inadmissible because they were the “fruits of an illegal *153 detention,” that the line-up identifications were inadmissible because they were unduly suggestive, and that the in-court identifications were inadmissible because they were “tainted” by the out-of-court identifications. We disagree.
With all due respect to the appellant and his arguments on appeal, we, simply, cannot find in the record before us any support for these contentions.
A
There is no evidence that the appellant was illegally arrested or detained. The robbery-murder of Mr. Doyle Pennington occurred on December 19, 1980. Descriptions of the two robbers and the “getaway car” were obtained by the investigating police officers from Mrs. Pennington, Johnny Payne and other witnesses at the scene. Through what appears to have been normal and efficient detective work by the Birmingham Police Department, the details of which were not disclosed at trial, the appellant was identified as a possible suspect. On December 23, 1980, just four days after the crime, Mrs. Pennington and Johnny Payne, the two key eyewitnesses to the robbery-murder, were, independently, shown a photographic line-up which included a photograph of the appellant. Although Johnny Payne could not positively identify the appellant from his photograph, Mrs. Pennington positively and unequivocally identified the appellant as the trigger-man, the robber who shot and killed her husband.
Based, primarily, upon Mrs. Pennington’s positive identification from the photographic line-up, the appellant was “picked up” that day as a suspect in the instant offense. He was placed in a line-up the following day and was positively identified, independently, by Mrs. Pennington and Johnny Payne.
The trial court concluded, and we agree, that there was absolutely no evidence of an illegal arrest or detention. Therefore, appellant’s arguments against admitting the identification evidence at trial on the “fruit of an illegal detention” theory, are unfounded.
B
Similarly, there was also a lack of evidence of any undue suggestiveness surrounding either the photographic line-up or the live line-up the following day. The police officers, Mrs. Pennington and Johnny Payne, all testified that there was nothing suggestive about either line-up. Mrs. Pennington witnessed her husband’s murder and then had the opportunity to view the triggerman face-to-face for several moments from the other side of a cash register counter. As she later explained, she was able to positively identify the appellant because she had a very close look at his face, and a very vivid memory of the man that shot and killed her husband, a recollection she would probably never forget. Her identifications of the appellant were unequivocal. Johnny Payne was not able to positively identify the appellant until he saw him in person, in the live line-up. He then realized that the appellant was the robber that he had seen face-to-face from about five feet away just after the shooting.
Both line-ups, from which the appellant was ultimately identified, included seven suspects. The other six individuals, in each instance were selected because of their similarity to the appellant in height, weight, age, hair style and race. Both line-ups, and the consequent identifications, occurred within five days of the crime. Viewing the “totality of these circumstances” in light of the “factors to be considered in evaluating the likelihood of misidentification” (i.e. the witness’s opportunity to view the person at the time of the crime, the witness’s degree of attention, the witness’s prior description of the person, the witness’s level of certainty, and the length of time between the crime and the identification), we have concluded that there was not a “very substantial likelihood of irreparable misidentification.” See, Neil v. Biggers, 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972), and cases therein cited. The in-court identifica *154 tions were, therefore, not “tainted” by the pretrial procedures. Consequently, the trial court did not err in refusing to exclude as evidence either the pre-trial or the in-court identifications. For more detailed analyses and discussions of the legal principles governing our determination of the admissibility of the identification evidence, herein, see our very recent opinions in Raines v. State, 428 So.2d 206 (Ala.Cr.App.1983), Miller v. State, 431 So.2d 586 (Ala.Cr.App.1983), and Jones v. State, 431 So.2d 1367 (Ala.Cr.App.1983).
Ill
Sergeant Gaut was permitted to testify that appellant's accomplice, Benny Ray Jones, was also identified by Mrs. Pennington from a line-up. The appellant objected to the introduction of this information and asserts on appeal that it should have been excluded because its prejudicial effect, associating the appellant with the, allegedly, “notorious” Benny Ray Jones, outweighed any probative value.
However, the appellant cites no authority, and we can find no support for his assertion. The trial court was well aware of the situation and the possibility of undue prejudice in associating the appellant with Benny Ray Jones. The trial court’s determination that this information was relevant and material and, therefore, admissible was within its sound discretion, and there was no abuse of said discretion in this instance. Bryant v. State, 49 Ala.App. 359, 272 So.2d 286, cert. denied, 289 Ala. 740, 272 So.2d 297, cert. denied, 412 U.S. 922, 93 S.Ct. 2744, 37 L.Ed.2d 149 (1972); Strickland v. State, 348 So.2d 1105 (Ala.Cr.App.), cert. denied, 348 So.2d 1113 (Ala.1977); Payne v. State, 419 So.2d 286 (Ala.Cr.App.1982).
The identification of Benny Ray Jones was additional evidence tending to connect the appellant with the instant offense and provided the jury a more “complete picture of the crime, with all attending circumstances.” See, Williams v. State, 354 So.2d 48, 51 (Ala.Cr.App.1977), cert. denied, 354 So.2d 53 (Ala.1978). The appellant was seen inside the store with Benny Ray Jones. They left the scene together in a “getaway car” that belonged to Benny Ray Jones, and the murder weapon was later recovered from a motel room registered to Benny Ray Jones. This evidence supported the eyewitnesses’ identifications of the appellant and its probative value outweighed any prejudice. See, Hunter v. State, 38 Ala.App. 351, 83 So.2d 737 (1956); Tate v. State, 346 So.2d 515 (Ala.Cr.App.1977); and Payne v. State, supra.
IV
The trial court did not err in sustaining the state’s objections to appellant’s questions concerning the blood alcohol content of the victim. Apparently, the appellant theorized that if the victim was intoxicated he might have provoked the attack that led to his death.
However, there was absolutely no evidence of provocation or self-defense. The state proved that Mr. Pennington was assisting a young customer when he was approached and shot at point-blank range. He did not provoke this assault and did not even have an opportunity to defend himself. The appellant's sole defense was alibi. The victim’s blood alcohol content was, therefore, not relevant to any material issue and it was properly excluded by the trial court.
V
The evidence was sufficient to support the jury’s verdict. The appellant was positively identified by Mrs. Pennington and Johnny Payne as a participant in the robbery and the murder of Mr. Pennington. Mrs. Pennington identified the appellant as the triggerman. Benny Ray Jones was identified as appellant’s accomplice. Jones and the appellant were seen leaving the scene of the crime in an automobile that belonged to Benny Ray Jones. The murder weapon was found in a motel room registered to Benny Ray Jones. Although there was evidence to the contrary (appellant’s alibi evidence), the jury was justified in finding the appellant “guilty of the capital felony as charged in the indictment.”
*155 For the foregoing reasons, this cause is affirmed.
AFFIRMED.
TYSON, HARRIS and SAM TAYLOR, JJ., concur.
BOWEN, P.J., concurs in result only.