Appellant was indicted by the Walker County Grand Jury for rape in the first degree in violation of § 13A-6-61, Code 1975. At arraignment appellant entered a plea of not guilty and not guilty by reason of insanity. The jury returned a verdict of guilty, and the court sentenced appellant to life imprisonment.
The prosecutrix stated she was ninety-one years old at the time of trial. The evening the attack occurred, the prosecutrix was at home alone, watching television, when she was suddenly struck in the head. A white man with his face covered pulled her into her bedroom where he placed her on the bed and sexually assaulted her. When asked if the attacker's private parts entered her private parts, the prosecutrix *Page 1354 
stated she did not know. She was sure, however, that he did engage in anal intercourse with her.
After the attack, the appellant fled. The prosecutrix was taken to the hospital later that night as a result of the assault.
Detective Bobby Cain of the Jasper Police Department testified he was at the police department on May 5, 1981 when appellant and his mother came into his office in response to a police inquiry. Detective Cain told appellant he wanted to talk to him about the prosecutrix' case. After his mother was excused from the room, Detective Cain read appellant hisMiranda warnings from a card. He told appellant he was not under arrest, and that he did not have to talk to him. Appellant told Detective Cain that he understood his rights.
Also present in the office at that time was Detective J.C. Poe. Both detectives were dressed in suits. After some general questions about his whereabouts on the night of the incident, appellant admitted that he had entered the prosecutrix' house through a window. He stated he struck her on the head with a frying pan, and sexually assaulted her. When Detective Cain asked him why he assaulted her, appellant responded "I must be sick, I guess I'm crazy." Detective Cain replied in response to appellant's statement that if he was sick, they would see that he got help.
A typed statement was subsequently taken, with appellant's permission. After that, a written confession was made by appellant. Detective Poe wrote the statement at appellant's request, and appellant signed the completed statement. The entire session lasted approximately forty-five minutes.
Officer J.C. Poe of the Jasper Police Department testified he was present on May 5, 1981 when appellant gave a statement at police headquarters. His testimony substantiated that of Detective Cain's. He also read into the record the statement he had transcribed for appellant on that same date.
Dr. Dick Owens testified he examined the prosecutrix at Druid City Hospital in Tuscaloosa, Alabama on the night of April 29, 1981. He observed a large laceration or hole on the top of her head which was so severe it could not be sutured. She was also scratched and bruised on her arms. He observed a laceration which ran along the posterior into the inside of the vaginal canal. Dr. Owens stated the injury was consistent with sexual intercourse. In his opinion, the prosecutrix' vagina had been penetrated. He testified the prosecutrix complained of pain in both her rectum and her privates. He stated it was very possible that the prosecutrix could not distinguish between pain in her vagina and rectal areas because the nerves in those areas are very similar. As well, it would have been difficult for her to distinguish a penetration of the vagina from that of the anus.
When questioned on cross-examination, Dr. Owens stated he found a fluid, blood, in the vagina which was consistent with sexual intercourse.
Kevin Noppinger, a forensic serologist for the State, testified he examined clothes worn by the victim the night of the assault. His examination revealed both blood and seminal stains were present. The blood stain was inconsistent with the prosecutrix' blood type and consistent with that of appellant.
Dale Gunn, a clinical psychologist, testified he examined appellant on May 5, 1981 at the request of Police Captain Bobby Cain. In his opinion, appellant was not suffering from any present and real mental illness, disease, or defect. He stated appellant knew both where he was and what he was doing. He had the capacity to appreciate the criminality of his conduct, as well as to conform his conduct to the requirements of the law. In his opinion, appellant was sane.
The State rested at the close of Dr. Gunn's testimony. Appellant's subsequent motion to exclude the evidence was denied.
After calling his mother and wife to testify as to his periodic blackouts and mental lapses, appellant rested. *Page 1355 
 I
Appellant alleges the court erred in admitting his confession in that it was involuntarily given because it was induced by a promise. He cites the following testimony from the record as giving factual support to his contention:
 "I asked him what he had hit her with. He told me he had hit her with a skillet. I asked him where the skillet was at, and he said he thought he left it in the house.
 "I asked him why he had done it, and he said, `I guess I'm sick, I guess I'm crazy.' He said, `I need some help,' and I told him, I said, `If you need some help,' I said, `I'll give you some help.'
"Q Did you tell him what type help you would get?
 "A Yes, sir. I told him I would get a doctor from the Mental Health to come down and talk to him."
(R. 11)
. . . .
 "Okay. I'm not trying to play semantics with you or word games with you. When this form was signed in your presence, this man had been told that some official, that is, somebody in the Jasper Police Department, would get him some help with Mental Health, isn't that correct, sir? I don't know how else to put it. Is that correct?
 "A He was — He asked for some help, and we told him we would get him some.
"Q Okay. And that was before he signed this form?
"A Yes, sir, it was before he signed that form."
(R. 43)
Upon a full reading of the testimony of Officers Cain and Poe, it is clear there is no factual basis for appellant's contention. The record reveals that the mention of mental help was not made by the officers until after appellant had orally confessed to the officers that he had assaulted the prosecutrix, and described all the details of the commission of the crime. It was only made then in response to appellant's assertion that he must be sick to do such a thing, and that he needed help.
Although the taped and written versions of the confession were not made until after the offer of mental counseling, it is clear that offer did not induce the original confession itself. Appellant had completely confessed at the time mental health was mentioned in response to his assertion of mental illness and request for help.
The question of improper inducement is determined by an examination of attending circumstances, with the inquiry focusing on whether the defendant's free will and rational intellect were overborne at the time he confessed. Eakes v.State, 387 So.2d 855 (Ala.Cr.App. 1978). In the instant case, we find the confession was not the product of a direct or implied promise. The oral confession was completed at the time help was mentioned and therefore the offer could not have induced the confession. Chatman v. State, 380 So.2d 351
(Ala.Cr.App. 1980). The taped and written confessions merelyduplicated and were cumulative of the oral confession.
Additionally, we note appellant requested the help in the first place. A confession is not rendered involuntary by a promise of benefit that was solicited freely and voluntarily by the defendant himself. Eakes, supra. Finally, Dr. Gunn's testimony leaves no doubt that appellant was mentally capable of giving a free and voluntary confession, despite any doubts the officers may have originally harbored, in light of his vile crime, as to appellant's mental health.
 II
Appellant contends the State failed to prove the crime as charged in the indictment, in that the evidence tended to prove sodomy under § 13A-6-63, Code 1975, rather than rape under §13A-6-61, Code 1975. He quotes those portions of the prosecutrix' testimony in which she repeatedly stated she was raped through her rectum, as opposed to her vagina.
While the prosecutrix did testify that appellant engaged in anal intercourse with her, she also testified as follows: *Page 1356 
 "So then he got through with what he — that's when he raped me. Then when he got through with that, he went on out.
 "Q Mrs. P ___, did his private parts enter your private parts?
"A Beg your pardon?
"Q Did his private parts enter your private parts?
"A I don't know.
"Q You say he raped you?
"A Yeah, he raped me. I don't —
"MR. STOVALL: I object to that question, Your Honor.
"THE COURT: Overrule." (R. 89-90)
Dr. Owens testified to the injuries to the prosecutrix' vagina and stated that blood found in the vagina indicated intercourse had taken place. He stated the injuries were consistent with sexual intercourse, and that in his opinion, the prosecutrix' vagina had been penetrated. As well, he indicated that it would have been difficult for the ninety-one year old prosecutrix to distinguish between anal and vaginal penetration.
The testimony of a State forensic serologist indicated an examination of clothing worn by the prosecutrix at the time of the assault revealed the presence of semen.
Finally, the appellant indicated in his confession that he had sexually assaulted the prosecutrix.
A required element of the crime of rape is proof of an actual penetration of the female sex organ by the male sex organ. Whether an actual penetration is accomplished is a question of fact to be determined by the jury. Jackson v. State,390 So.2d 671 (Ala.Cr.App.), cert. denied, 390 So.2d 675 (Ala. 1980).
While the facts indicated more than one form of penetration occurred, we find the evidence was sufficient to justify the jury's finding that there had been a penile penetration of the prosecutrix' vagina. Jackson, supra.
 III
Appellant contends the court erred in refusing to give the following written harges:
"Defendant's Charge # 2
 "I charge the jury that penetration of the Defendant's penis into the anus of Mrs. L ___ P ___ is not sufficient for a finding of guilty. (R. 292-293).
"Defendant's Charge # 3
"I charge the jury to find the Defendant not guilty."
The court's oral charge instructed the jury as appears below:
 "Now, a male commits the crime of rape in the first degree if: one, he engages in sexual intercourse with a female; two, he does so by forcible compulsion.
 "To sustain the charge of rape in the first degree in this case, the State by the evidence must prove beyond a reasonable doubt each of the following elements of the offense first, that James Robert Rowe, a male, engaged in sexual intercourse with L ___ P ___, a female; second, that he did so by forcible compulsion.
 "Now, the definition of sexual intercourse is `Such term has its ordinary meaning and occurs upon any penetration, however slight. Emission is not required.' Female: `Any female person who is not married to the actor.' Forcible compulsion: `Physical force that overcomes earnest resistance or a threat expressed or implied and places a person in fear of immediate death or serious physical injury to himself or another person.'
. . . .
 "I charge the jury that if you do not find that the defendant's penis penetrated the vagina of Mrs. P ___, you must find the defendant not guilty." (R. 236-237, 242)
The court's oral charge fully and substantially covered the principle of law expressed in appellant's requested charge number two. The refusal of a requested charge does not constitute prejudicial error where the principle of law is substantially *Page 1357 
and fairly covered elsewhere in the court's oral charge.Robinson v. State, 405 So.2d 1328 (Ala.Cr.App.), cert denied,405 So.2d 1334 (Ala. 1981).
Charge number three was correctly refused in light of part II above.
Additionally, appellant did not call the court's attention to each specific refused written charge and set forth specific grounds for his objection to the refusal of these charges. Absent such action on appellant's part, there is nothing before this court to review. Allen v. State, 414 So.2d 989
(Ala.Cr.App. 1981), aff'd 414 So.2d 993 (Ala. 1982). Gullatt v.State, 409 So.2d 466 (1981).
We have carefully examined this record and find no error therein. This cause therefore is due to be and is hereby affirmed.
AFFIRMED.
All the Judges concur.