Frank Patrick was convicted by a Mobile County jury of rape in the first degree of a ten-year-old girl and was sentenced to ten years' imprisonment in the penitentiary. By this appeal, Patrick contends that the court should have granted his motion for judgment of acquittal for failure to make out a prima facie case, contending that the state had failed to prove the element of sexual intercourse.
 "(a) A male commits the crime of rape in the first degree if:
 "(1) He engages in sexual intercourse with a female by forcible compulsion; or
 "(2) He engages in sexual intercourse with a female who is incapable of consent by reason of being physically helpless or mentally incapacitated; or
 "(3) He, being 16 years or older, engages in sexual intercourse with a female who is less than 12 years old.
 "(b) Rape in the first degree is a Class A felony." § 13A-6-61, Code of Alabama 1975.
"Sexual intercourse" is defined in § 13A-6-60 (1):
 "Such term has its ordinary meaning and occurs upon any penetration, however slight; emission is not required."
The 10-year-old alleged victim of this crime identified the appellant as the perpetrator. She testified that she, her mother, her aunt, and her aunt's children were at her aunt's house on the night in question. She testified that the accused was not there when she went to bed but he was when she woke up. She testified that she had slept in the bed with her 11-year-old cousin. Her testimony was as follows:
 "Q: Okay, now, when you went to bed — when you went to bed, what is the next thing that you remember happening?
"A: Me waking up and seeing Frank on top of me.
"Q: Yes. Tell me about that
 "A: He was moving around on top of me and my stomach was hurting.
"Q: Okay, your stomach was hurting. Were you in pain?
"A: (No audible response).
"Q: Were you in pain?
"A: (No audible response).
"Q: Were you hurting?
"A: Yes sir.
 "Q: Okay, now, did you have on — when you went to bed, did you have any panties on?
"A: Yes sir.
"Q: What happened to those panties?
"A: When I woke up, they was off.
 "Q: They were off, okay. Did you see anybody take them off?
"A: No sir.
". . . .
 "Q: Now, when Mr. Patrick was rolling on top of you, did you scream?
"A: No sir.
"Q: Okay, and why didn't you scream?
"A: I was scared, and I thought it was a dream.
"Q: Okay, now, did you feel him inside of you?
"A: Yes sir.
"Q: Okay, you felt his sexual organs inside of you —
"MR. AUNE: Judge, object, leading the witness.
 "THE COURT: Don't lead the witness, Mr. Jordan, please.
 "MR. AUNE: Judge, I ought to move for a mistrial at this time. That, you know, [is] a very crucial part of the case, and Mr. Jordan leads it through it. He knows better than that. *Page 114 
 "THE COURT: The Court will deny the motion for a mistrial. Do not lead your witness at this time, Mr. Jordan.
"Q: Tell us what you felt, okay.
"A: Well, it felt like something was in me.
"Q: Okay.
"MR. AUNE: I can't hear you.
"THE COURT: Speak a little bit louder.
"THE WITNESS: Felt like something was in me."
Thereafter, the witness used anatomically correct dolls to indicate the positions of herself and her attacker. She testified that she told her mother the next day that her stomach was hurting and that she did not feel good, but she actually told what had happened on the second day after it occurred.
Dr. Janice Morton-Hunte, a medical doctor, testified for the state. She testified that she had examined the 10-year-old girl in this case. This was her testimony, in part:
 "Q: Now, according to your examination, would you tell us what you found in your examination relative to what we are here for today?
 "A: All right. At the time that I saw her, I did a complete physical examination on her, and the findings of the examination were normal up to the point of examining the genitalia. And when I did the genital examination on her, it revealed that her hymen had been penetrated. The introitus, which is the opening to the vagina, was gaping. There was evidence of irritation and redness, and evidence of a vaginal discharge. All of these are abnormal findings. You would not find that in a nine-year-old child who had not been sexually molested."
After some jousting among counsel in court, the following occurred:
 "Q: Normally, in a child, the introitus, what kind of opening are you talking about?
 "A: Very small. About three millimeters, which is about half the size of the average ballpoint pen. There is a very small opening, about half the size of a ballpoint pen.
 "Q: Okay, now, but with [this child], you wrote down, or in your records, you put down that she had a gaping introitus. How does what you found with her compare to what you normally find in a child her age?
 "A: The findings indicated that something very large had entered her vagina. And there was disruption of the hymen. The irritation was present, and as I said those are not at all normal findings in a nine-year-old.
 "Q: Now, Doctor, what happened — what occurs when that hymen is broken like that? What occurs?
 "A: There's tearing of the tissue. There's bleeding. That's painful. There is swelling, redness, irritation, a discharge.
 "Q: Now, in your opinion, assuming that [this child] testified that she woke up; that the Defendant was on top of her rolling around; that she felt something inside her; that it was painful and she was hurting, in your opinion to a reasonable degree of medical certainty, is this consistent, this testimony that she testified to, with your findings?
"A: It is absolutely consistent with my findings.
 "Q: And in your opinion to a reasonable degree of medical certainty, what is your opinion as to whether or not her vagina was penetrated?
 "A: Based on the findings of the gaping introitus, her vagina was penetrated."
Because of the language and communication difficulties of an underage victim, more than a few cases have dealt with the matter of proving what was formerly referred to as a "statutory rape." Whether there was actual penetration in a rape prosecution is a question of fact to be determined by the jury.Rowe v. State, 421 So.2d 1352, 1356 (Ala.Cr.App. 1982). InRowe, the victim testified that she did not know whether the accused had actually *Page 115 
placed his private parts inside her. In that case, this court held that there was sufficient evidence from which the jury might find the accused guilty. In Swint v. State, 455 So.2d 285
(Ala.Cr.App. 1984), the testimony of the victim was that the accused got up on top of her and that he was fooling with her, meaning sexually. The court in that case affirmed the conviction, holding that the penetration essential for a rape conviction does not have to be proved by the use of any particular words.
Beckley v. State, 353 So.2d 542 (Ala.Cr.App. 1977), stands as authority for the proposition that circumstantial evidence may be relied upon to establish a prima facie case of penetration in a rape case. In Smith v. State, 345 So.2d 325 (Ala.Cr.App.), cert. quashed, 345 So.2d 329 (Ala. 1977), the victim testified that the defendant got on top of her, that he put something inside of her, and that it hurt. The court found that based upon this testimony, the jury could have fairly inferred that there had been penile penetration.
In conclusion, we find the evidence more than sufficient for the jury to find beyond a reasonable doubt that the accused did in fact have sexual intercourse with this underaged girl. His contention is without merit, and his conviction is affirmed.
AFFIRMED.
All the Judges concur.