619 So.2d 699 (1993)
Lisa A. TALAMO
v.
Farhad A. SHAD, Dean Boats, Inc., Elevating Boats, Inc., and Government Employees Insurance Company.
consolidated with
Agnes LETULLE
v.
DEAN BOATS, INC., Elevating Boats, Inc., and Farhad A. Shad.
Nos. 92-CA-1085, 92-CA-1086.
Court of Appeal of Louisiana, Fourth Circuit.
May 19, 1993.
*700 John M. Gallagher, Jr., New Orleans, for plaintiff/appellee, Lisa A. Talamo.
David W. Oestreicher, II, Oestreicher & Hackett, New Orleans, for plaintiff/appellee, Agnes Letulle.
Charles Hooker, Halverson & Hooker, Metairie, for defendants/appellants, Farhad A. Shad, Dean Boats, Inc., and Elevating Boats, Inc.
John W. Norwood, III, New Orleans, for defendant/appellant, GEICO.
W. Paul Wilkins, Leake & Andersson, New Orleans, for Third-Party defendants/appellees, Agnes Letulle and Government Employees Ins. Co.
Before BARRY, WARD and ARMSTRONG, JJ.
ARMSTRONG, Judge.
In this consolidated appeal, defendants, Farhad A. Shad, Dean Boats, Inc. and Elevating Boats, Inc., appeal a judgment notwithstanding the verdict ("JNOV") entered in favor of plaintiffs, Agnes Letulle and Lisa A. Talamo. Original defendant, Government Employees Insurance Company ("GEICO"), appeals the dismissal of its cross-claim against the other defendants.
This action arises out of an automobile accident involving a vehicle driven by plaintiff Agnes Letulle, and a vehicle driven by defendant Farhad A. Shad. The accident occurred on Thursday, April 23, 1987. Letulle and her guest passenger, plaintiff Lisa A. Talamo, filed separate suits against Shad and his employer, Elevating Boats, Inc., and the owner of the vehicle Shad was operating, Dean Boats, Inc. Also named as a defendant in Talamo's suit was Letulle's uninsured motorist ("UM") insurer, GEICO. Shad, Dean Boats and Elevating Boats filed a third-party demand against GEICO for damages and contribution. GEICO filed a cross-claim against defendants Shad and Elevating Boats, who self-insured the vehicle Shad was operating, and Dean Boats, for the $2,500.00 it tendered to Letulle under the UM provisions of its policy.
Shad, Dean and Elevating dismissed their claim against GEICO. Talamo also dismissed her claim against GEICO. Trial *701 was held and the jury returned a verdict finding that Shad was not negligent, that Letulle was negligent, and that Talamo suffered no damages. The trial court subsequently granted a JNOV in favor of plaintiffs Letulle and Talamo, finding Shad, Dean and Elevating 100% at fault. The trial court further found Letulle and Talamo suffered damages and awarded them in the amounts of $6,900.00 and $15,880.30, respectively.
Defendants Shad, Dean and Elevating raise six assignments of error. GEICO complains of the trial court's dismissal of its cross-claim against defendants. We first address the assignments of error raised by defendants.

POLICE REPORT
Defendants claim the trial court erred in allowing the deputy sheriff who investigated the accident to "read" from his accident report. Wayne Babin was a deputy sheriff with the St. Bernard Parish Sheriff's Office at the time of the accident. Babin was qualified by the trial court as a "specialist in accident investigation."
Counsel for one plaintiff went through the accident report with Babin item by item. Defense counsel objected but the trial court ruled that Babin could use his report to refresh his memory. La. C.E. art. 612 allows a witness to use any writing to refresh his memory while testifying. However, Authors' Note (1) to C.E. art. 612 states:
When the witness has been permitted to consult the source, a writing, for example, and it has not refreshed his memory to the extent that he now has an independent recollection of the event in question, [C.E. art. 612] does not authorize the witness to read the writing into evidence, nor does it authorize the introduction of the writing, itself.... The purpose of [C.E. art. 612] is to give a witness an opportunity to jog his memory so that he may testify from memory.
Under La. C.E. arts. 803(8)(b)(i) and 803(6), investigative reports by police and other law enforcement personnel are not admissible as exceptions to the hearsay rule, and are not otherwise admissible under the Code of Evidence.
The issue before us is whether Babin effectively read his report into evidence, thus circumventing the prohibition against the admissibility of police investigative reports. The record indicates that Babin read portions of the report into evidence. The following portion of the transcript is illustrative:
BY MR. OESTREICHER:
Q Officer, under the box marked violations insofar as vehicle one, do you have a check mark by a particular box, please?
A Yes, I do.
Q What is that check mark by?
A It says other hazards or unknown violations.
Q Now, insofar as vehicle two, do you have any violations noted?
A No, sir.
Q No violations?
A No violations.
Q Is there a box, in fact, to check it off?
A Yes.
Q The box below that is called reason for movement, and what do you have checked for that?
A For vehicle one, I have due to driver's violation; and vehicle two; normal movement.
The record indicates that Babin was answering counsel's questions by reading directly from the investigative report. Babin should not have been allowed to do so.
It is possible the investigative report could have been admissible under La. C.E. art. 803(5), which provides that a record concerning a matter about which a witness once had knowledge but now has insufficient recollection to enable him to testify fully and accurately, which is known to have been made or adopted by the witness when the matter was fresh in his memory and to reflect that knowledge correctly, is admissible as an exception to the hearsay rule. For a record to come in under this exception it must be shown, among other things, that the witness had firsthand *702 knowledge of the matter described in the memorandum and that the memory of the witness with respect to the matter described in the memorandum is now impaired. However, there is no indication that counsel for plaintiffs offered the investigative report into evidence C.E. art. 803(5). Nor is there any evidence that counsel laid a proper predicate for such introduction.
The trial court erred in allowing Babin to answer questions on direct examination by reading from his investigative report. The report itself was not shown to be admissible. We will exclude the testimony of Babin referring directly to the police report when considering the evidence.

HYPOTHETICAL QUESTIONS
Defendants claim the trial court erred in allowing plaintiff Letulle's counsel to ask plaintiff Talamo's physician, Dr. Parnell, a hypothetical question. Dr. Parnell, qualified by the trial court as an expert in the field of orthopedics, was called as a witness by counsel for Talamo. After counsel for Talamo finished his direct examination of Dr. Parnell, counsel for Letulle was allowed, over the objection of defense counsel, to pose a hypothetical question to Dr. Parnell about a patient who, although discharged from a physician's care, continues to experience symptoms and problems.
Defendants cite no authority which bars the posing of a hypothetical to an expert witness presented by a co-party. La.C.C.P. art. 1631 provides in part:
A. The court has the power to require that the proceedings shall be conducted with dignity and in an orderly and expeditious manner, and to control the proceedings at the trial, so that justice is done.
A court "shall" exercise reasonable control over the mode and order of interrogating witnesses and presenting evidence so as to, among other things, "make the interrogation and presentation effective for the ascertainment of the truth." La. C.E. art. 611(A). A trial court's discretion in conducting trial includes the admissibility of a witness's testimony. Combs v. Hartford Ins. Co., 544 So.2d 583 (La.App. 1st Cir. 1989), writ denied, 550 So.2d 630 (La.1989).
We are unable to say that the trial court abused its discretion or committed a reversible error in allowing counsel for plaintiff Letulle to ask a generalized hypothetical question of plaintiff Talamo's expert witness. The witness, Dr. Parnell did not say anything specifically about Talamo. He could not have done so because he had not examined her.

JURY INSTRUCTION
Defendants claim the trial court erred in failing to instruct the jury on La.R.S. 32:71(B)(2) which provides in pertinent part:
[A]ny vehicle proceeding on a multilane highway at a speed slower than ten miles per hour less than the posted maximum speed limit shall be driven in the right hand lane then available for traffic, or as close as practicable to the right hand curb or edge of the roadway, except when overtaking and passing a vehicle proceeding in the same direction or when preparing for a left turn at an intersection or into a private road or driveway....
Letulle testified that she was travelling at approximately 30 mph when she applied her brakes as Shad pulled out into her lane of travel. The posted speed limit was 45 mph. Talamo testified that Letulle was travelling an estimated 30-40 mph when she noticed that Shad's vehicle was not going to stop. Assuming for the sake of argument that Letulle was travelling 30 mph at the time she applied her brakes and took evasive action in an attempt to avoid Shad's vehicle, she arguably was in violation of R.S. 32:71(B)(2).
However, the class of persons R.S. 32:71(B)(2) was intended to protect was not persons making u-turns or persons entering roadways from median cuts. R.S. 32:71(B)(2) was intended to protect those persons proceeding in the same direction as the slow moving party. The requirements of the statute facilitate the smooth, safe *703 flow of traffic by allowing faster moving vehicles to pass in the left lane(s) of travel.
Instructing the jury on R.S. 32:71(B)(2) would only have confused the jury as to causation. We find no error in the trial court's jury instructions.

JUDGMENT NOTWITHSTANDING THE VERDICT
Defendants claim the trial court erred in granting plaintiffs' joint motion for JNOV. La.C.C.P. art. 1811 establishes the procedure for filing a motion for JNOV. The standard for granting JNOV has been developed jurisprudentially. A JNOV should be granted only when the "facts and inferences point so overwhelmingly in favor of one party that the Court believes that reasonable men could not arrive at a contrary verdict. On the other hand, if there is substantial evidence opposed to the motions, that is, evidence of such quality and weight that reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions, the motions should be denied." Scott v. Hospital Service District No. 1, 496 So.2d 270 (La.1986); Boudreaux v. Schwegmann Giant Supermarkets, 585 So.2d 583 (La.App. 4th Cir.1991).
A trial court may not weigh the evidence, evaluate the credibility of witnesses or substitute its own judgment for that of the jury when deciding a motion for JNOV. Boudreaux v. Schwegmann Giant Supermarkets, supra. A JNOV is properly granted only when, without weighing the credibility of the evidence or the witnesses, there can be but one reasonable conclusion as to the correct and proper judgment. Alumbaugh v. Montgomery Ward & Co., Inc., 492 So.2d 545 (La.App. 3rd Cir.1986). A JNOV is appropriate only when the jury verdict is one which reasonable men could not have rendered. Adams v. Security Insurance Co., 543 So.2d 480 (La.1989).
It is undisputed that at the time of the accident Letulle and Talamo were proceeding within the speed limit in a southbound direction on Judge Perez Drive in the left-hand lane, adjacent to the median or neutral ground. It is also undisputed that Shad made, or was making, a u-turn from northbound Judge Perez Drive onto southbound Judge Perez Drive immediately before, or at the time of, the accident. It is undisputed that it was clear and sunny on the day of the accident. Both Letulle and Talamo testified that Shad did not yield when he made the u-turn, and entered the left-hand lane in which they were travelling. Letulle and Talamo testified that Letulle then switched lanes, blew her horn and applied her brakes in an attempt to avoid striking Shad's vehicle. Letulle's evasive maneuvers failed and she claimed that the left side of her vehicle, now in the right lane of travel, was struck by the right front bumper area of Shad's vehicle which, when making the u-turn, went partially into the right-hand lane.
Shad claims that he saw Letulle's vehicle before he made the u-turn. However, Shad admitted that when he pulled out into southbound Judge Perez Drive, he did not know which lane Letulle was in. Shad claimed he made the u-turn into the left-hand lane and was parallel to the neutral ground/median when Letulle's vehicle struck him. Shad could not actually state what had happened since he claimed Letulle's vehicle came from behind and struck him. The only positive testimony he gave was regarding what Letulle's vehicle did after it allegedly struck him.
No accident reconstruction experts testified on behalf of either party. Photos were introduced showing the damage to both vehicles. The photos alone do not favor one version of the accident over the other. Even though the right side of Shad's front bumper was pulled out, this presumably could have resulted from his vehicle striking Letulle's vehicle as described by Letulle and Talamo or by their vehicle striking Shad's vehicle as described by him. Letulle's vehicle was presumably travelling at a greater rate of speed than Shad's, who had presumably necessarily slowed to make the u-turn. If Shad struck Letulle or Letulle struck Shad, the forward movement of Letulle's vehicle would likely have pulled Shad's bumper out to some extent.
*704 The dispositive factor in this case is Shad's making the u-turn without knowing which lane Letulle was in. It is undisputed that if Letulle was travelling in the left-hand lane she had the right of way in that lane. Both she and Talamo affirmatively testified that Letulle was in the left-hand lane. Shad did not know which lane they were in. Other than Shad's testimony, there was no evidence indicating that Letulle was at fault in causing the accident. Reasonable and fair-minded men could not have found other than that Letulle was in the left-hand lane at the time Shad made the u-turn, that Shad made the u-turn without knowing the position of Letulle's vehicle, that Letulle had the right of way, and that it was more probable than not that Shad was negligent in causing the accident.
The evidence was such that reasonable and fair-minded men could not have reached a verdict other than one finding by a preponderance of the evidence (that it was more probable than not) that Shad was 100% at fault in causing the accident. Therefore, the trial court properly granted the JNOV.

DAMAGES
The jury did not address the issue of damages suffered by plaintiff Letulle because the court instructed them to skip that interrogatory if they found no fault on the part of Shad. The jury specifically found that Talamo suffered no damages as a result of the accident. In granting the JNOV the trial court awarded Letulle a total of $6,900.00 in damages$5,000.00 for pain and suffering, $500.00 in medical expenses, and $1,400.00 in property damages. The court awarded Talamo a total of $15,880.30 in damages$15,000.00 for pain and suffering, $450.00 for medical expenses, and $430.30 in lost wages.
We will review the issue of damages awarded to Letulle as if we were reviewing an original award made by the trial court, not a JNOV.
We first determine whether the trial court erred in finding a causal link between the accident and any damages suffered by Letulle. This court's function on appellate review is to determine whether the evidence was sufficient for the trial court's implicit factual finding that Letulle sustained damages as a result of the accident, and whether that finding was clearly wrong. Rosell v. ESCO, 549 So.2d 840 (La.1989); Canter v. Koehring Co., 283 So.2d 716 (La.1973); Arceneaux v. Domingue, 365 So.2d 1330 (La.1978).
There is no question but that Letulle's automobile was damaged in the accident. She presented two repair estimates, one in the amount of $1,500.00 and one in the amount of $1,171.65. She testified that because "the insurance wouldn't pay for the repairs," she paid $300.00 to have the vehicle repaired herself. However, there was no evidence as to the extent of the $300.00 worth of repairs. We believe the trial court could have awarded the full amount of the $1,500.00 estimate. Its award of $1,400.00 was supported by the record.
Letulle testified that she was "shaken up" in the accident. She said she felt terrible that evening, which was a Thursday. She sought medical treatment on the following Monday at Hotel Dieu Family Medical Center in Chalmette. Her complaints were pain in her left arm, hand, knee and calf, soreness in her right arm, and headaches. A medical report reveals that on examination her neck was slightly tender, there was some tenderness in the lumbar area of her spine, and tenderness in her left arm, wrist and hand, and in her right arm. She was prescribed two medications and told she could apply a heating pad several times a day to areas of discomfort. The diagnosis was muscle tension/spasm. The cost of that visit was $32.00. Letulle also testified that she saw a family physician twice, on the day of the accident and five days later. Letulle presented receipts in the total amount of $50.00 for those visits. She also presented a receipt in the amount of $12.39 for two prescription medications dated April 29, 1987, evidencing her purchase of the two medications prescribed by the physician at Hotel Dieu Medical Center.
*705 Letulle also saw a third physician, Dr. Altman, who rendered a report dated August 3, 1987, diagnosing Letulle as suffering from lumbosacral sprain and left biceps sprain. Dr. Altman saw Letulle four times, May 1, May 15, June 5, and July 5, 1987. She called his office on July 24, 1987 to say that she was "feeling fine" and wished to be discharged, which she was. Dr. Altman's total charges were $310.00 as evidenced by a statement from his office. Letulle testified that she actually experienced pain until the end of 1987, that it did not stop in July 1987. She also testified that because the vehicle Shad was operating at the time of the accident was owned by his employer, Lynn Dean, who was also a member of the St. Bernard Parish School Board, she feared for her job as a school teacher.
The evidence furnishes a basis for a finding that Letulle was injured as a result of the accident. Although her injuries may have been minor, she experienced pain and suffering, and, whether justifiable or not, some mental distress concerning her job security. As for general damages, before an appellate court can disturb a trial court's award of general damages, the record must clearly reveal that the trier of fact abused its discretion in making the award. Only after finding that the record shows that the trial court abused its discretion can the appellate court disturb the award, and then only to the extent of raising or lowering it to the highest or lowest point which would have been within the discretion afforded the trial court. Coco v. Winston Industries, Inc., 341 So.2d 332 (La.1977); Reck v. Stevens, 373 So.2d 498 (La.1979). Before an appellate court questions a trial court award as inadequate or excessive, it must look not to prior awards, but to the individual circumstances of the instant case. Reck v. Stevens, 373 So.2d at 501.
Although $5,000.00 for Letulle's pain and suffering may be on the high end of the scale, we are unable to say that the trial court abused its discretion in making that award. The award for property damage in the amount of $1,400.00 is supported by the record. The award of medical expenses will be reduced to $404.39, the amount supported by the record.
Talamo testified that the impact of Shad's vehicle striking Letulle's vehicle "jolted" her. She said her left shoulder began hurting immediately after the accident. She said she could not use her left arm to write on the chalk board at school that day. She said her left arm hurt and she could not raise it up. She also reported left leg numbness and neck pain, which, she said, went away after approximately two weeks. She had no problems before the accident. Talamo stated the pain has been so severe at times that it prevents her from doing daily tasks like reaching up into kitchen cabinets and picking up and holding her child. She also said she hesitates to do certain things, knowing that the action may cause her pain. Talamo testified that her pain went away for about eight months, but then flared up again in March 1988.
On the day of the accident, after school, Talamo sought treatment from Methodist Care Center. The attending physician prescribed anti-inflammatory medication and put her arm in sling. Subsequently, Dr. Melvin Parnell, an orthopedist, treated Talamo for her injuries. She complained of left shoulder pain. He diagnosed biceps tendonitis, and prescribed an anti-inflammatory medication. Dr. Parnell later prescribed a course of exercises and sent Talamo to physical therapy eight times. He treated Talamo from May 13, 1987 until May 27, 1988, when he felt her symptoms had cleared up. He saw her again in March 1988 when she said she was still having the same problems. In between these visits Talamo sought treatment on two occasions from Dr. Robert Steiner, the physician who took over Dr. Parnell's office after he relocated. Dr. Parnell continued to treat Talamo off and on until some five months before trial. Dr. Parnell testified that Talamo's complaints were consistent and that he felt she would have symptoms and problems related to the injuries for the rest of her life. He said the pain was not severe, not disabling, but bothersome. Dr. Parnell related the shoulder *706 problems to the automobile accident. Talamo testified that she experiences pain every month. She said the number of occurrences varies. She doesn't play tennis anymore because of the pain.
Dr. Monroe Laborde, also an orthopedist, testified on behalf of defendants. Dr. Laborde examined Talamo one time, on November 27, 1989, in connection with this litigation. He testified that on exam Talamo exhibited tenderness over the front of her shoulder in the area of the biceps tendon. His diagnosis was mild biceps tendonitis, with no evidence of physical limitations. Dr. Laborde testified that more likely than not there was a non-physical component to Talamo's complaints of pain. On cross-examination Dr. Laborde admitted that he may have seen Talamo for as few as 12 minutes when he examined her.
Applying the JNOV standard, we find that the reasonable and fair-minded could not find other than that Talamo established by a preponderance of the evidence that she suffered damages as a result of an injury she sustained in the accident. The jury verdict obviously addressed only the causal connection between the accident and Talamo's alleged injuries. The jury did not reach the issue of quantum. Therefore, we will apply the clear abuse of discretion standard of review to the award of general damages. Although on the high side, we are unable to find that the trial court clearly abused its discretion in awarding Talamo $15,000.00 in general damages. Talamo was 23 years old at the time of the accident. The evidence supports a finding that she will experience pain symptoms for the rest of her life and will always be hesitant to do certain things for fear of aggravating her tendonitis.
The record only supports an award of $360.60 for medical expenses, based on invoices bills and cancelled checks submitted by Talamo. The record supports the award of $430.00 for wages lost when Talamo had to go to physician's appointments and physical therapy.
Accordingly, for the foregoing reasons, we will reduce Talamo's total award from $15,880.30 to $15,790.90. We will reduce Letulle's total award from $6,900.00 to $6,804.39.

LIABILITY OF DEAN BOATS, INC.
Defendants claim there was insufficient evidence to find Dean Boats, Inc. liable. Defendants confess that Dean Boats, Inc. is the owner of the vehicle Shad was operating at the time of the accident. The vehicle was self-insured by Elevating Boats, Inc., Shad's employer of eleven years.
Ordinarily, owners of automobiles are not personally liable for damages which occur while another is operating the vehicle. Harris v. Hamilton, 569 So.2d 1 (La. App. 4th Cir.1990); Friday v. Mutz, 483 So.2d 1269 (La.App. 4th Cir.1986). Exceptions to this general rule occur only when the driver is on a mission for the owner of the vehicle, when the driver is an agent or employee of the owner, and when the owner negligently entrusts the vehicle to an incompetent driver. Harris v. Hamilton, supra.
There is no evidence that Dean Boats, Inc. was Shad's employer at the time of the accident. There is no evidence that Dean Boats, Inc. is, for instance, the parent company of Elevating Boats, Inc. The only basis of Dean Boats' liability would be simply that it was the owner of the vehicle. There was no evidence adduced at trial concerning how Shad came to be operating the vehicle. There was no evidence that Dean Boats was negligent in allowing Shad to operate the vehicle.
Accordingly, there was insufficient evidence to impose liability on Dean Boats, Inc. The trial court was clearly wrong in finding Dean Boats, Inc. liable.

GEICO'S CROSS-CLAIM
Original defendant GEICO filed a cross-claim against Shad, Elevating Boats, Inc. and Dean Boats, Inc., claiming that it was subrogated to the rights of its insured, plaintiff Letulle, to whom it had unconditionally tendered a check in the amount of $2,500.00. GEICO tendered the check under the terms of a policy which provided *707 Letulle uninsured/underinsured motorist coverage.
GEICO correctly argues that Shad was considered an uninsured motorist because the vehicle he was operating was self-insured by Elevating Boats, Inc. See Jones v. Henry, 542 So.2d 507 (La.1989). It also is correct in arguing that upon its payment to Letulle it was subrogated to her rights against Shad and Elevating Boats, Inc. to the extent of its payment. Serpas v. Ridley, 556 So.2d 134 (La.App. 5th Cir.1990). See also Bosch v. Cummings, 520 So.2d 721 (La.1988).
Therefore, the trial court erred in dismissing GEICO's cross-claim against Shad and Elevating Boats, Inc.
For the foregoing reasons, we reverse that part of the trial court judgment finding Dean Boats, Inc. liable, and dismiss all claims against it; we reverse that part of the trial court judgment dismissing the cross-claim filed by GEICO against Shad and Elevating Boats, Inc. We amend the judgment of the trial court to (1) reduce the award of damages made to plaintiff Lisa A. Talamo to $15,790.90; (2) reduce the award of damages made to Agnes Letulle to $4,304.39 ($6,804.39 less the $2,500.00 tendered to Letulle by GEICO); and (3) to award GEICO $2,500.00. We affirm the judgment of the trial as amended.
REVERSED IN PART; AMENDED; AFFIRMED AS AMENDED.