STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

06-1601

ANDREA S. PANNELL

VERSUS

ENCOMPASS INSURANCE COMPANY
AND DUSTIN LAZARONE

************

APPEAL FROM THE
NINTH JUDICIAL DISTRICT COURT
PARISH OF RAPIDES, NO. 221,454-F
HONORABLE GEORGE METOYER, JR.,
DISTRICT COURT JUDGE

************

JAMES T. GENOVESE
JUDGE

************

Court composed of Sylvia R. Cooks, Oswald A. Decuir, and James T. Genovese, Judges.

AFFIRMED AS AMENDED.

Eugene P. Cicardo, Jr.
Law Offices of Eugene P. Cicardo, Jr.
Post Office Box 1128
Alexandria, Louisiana 71309-1128
(318) 445-2097
COUNSEL FOR PLAINTIFF/APPELLEE:
    Andrea S. Pannell

**Mesonie T. Halley, Jr.**
**Law Offices of Harold G. Toscano**
**One Lakeshore Drive, Suite 1710**
**Lake Charles, Louisiana 70629**
**(337) 497-0039**
**COUNSEL FOR DEFENDANTS/APPELLANTS:**
   **Encompass Insurance Company and**
   **Dustin Lazarone**

**GENOVESE, JUDGE.**

In this personal injury case, Defendants appeal the trial court's award of $195,000.00 in general damages for an alleged aggravation of a pre-existing back condition and shoulder and neck injuries resulting from an automobile accident. For the following reasons, we affirm as amended.

**FACTS**

On December 3, 2003, Plaintiff, Andrea Pannell (Pannell), was involved in a motor vehicle accident with Defendant, Dustin Lazarone (Lazarone), in Alexandria, Louisiana. Pannell filed suit for personal injuries against Lazarone and his automobile liability insurance carrier, Encompass Insurance Company (Encompass). The parties stipulated that Lazarone was at fault in the accident and thereby liable to Pannell for her personal injury resulting therefrom. Insurance coverage was not at issue. Therefore, the only issue before the trial court was damages.

Following a bench trial, the trial court found that Pannell had sustained an aggravation of a pre-existing back condition and new injuries to her neck and shoulder. The trial court found that there was no evidence to correlate Pannell's lumbar surgery of January 11, 2005 to the December 3, 2003 automobile accident. Therefore, Pannell was not awarded the medical expenses attributable to the lumbar surgery, nor the lost wages she sustained as a result of the surgery. Based upon these findings, the trial court awarded Pannell $195,000.00 in general damages "plus specials" of $9,083.96. Defendants, Encompass and Lazarone, appeal the general damage award.

**ISSUE**

The sole issue presented for our review is whether the general damage award

1

was an abuse of the trial court's discretion.

## LAW AND DISCUSSION

In *Andrus v. State Farm Mut. Auto. Ins. Co.*, 95-801, p. 8 (La. 3/22/96), 670 So.2d 1206, 1210 (citations omitted), the supreme court stated:

In appellate review of general damage awards, the court must accord much discretion to the trial court judge or jury. The role of an appellate court in reviewing awards of general damages is not to decide what it considers to be an appropriate award, but rather to review the exercise of discretion by the trial court. Only if the reviewing court determines that the trial court has abused its "much discretion" may it refer to prior awards in similar cases and then only to determine the highest or lowest point of an award within that discretion.

Because discretion vested in the trial court is "great," and even vast, an appellate court should rarely disturb an award of general damages. Reasonable persons frequently disagree about the measure of general damages in a particular case. It is only when the award is, *in either direction*, beyond that which a reasonable trier of fact could assess for the effects of the particular injury to the particular plaintiff under the particular circumstances that the appellate court should increase or reduce the award.

Following the automobile accident on December 3, 2003, Pannell was seen and treated by Dr. Roy Strickland (Dr. Strickland), a chiropractor; Tom Boers (Mr. Boers), a physical therapist; Dr. Gerald Foret (Dr. Foret), an internist; Willie Miller (Mr. Miller), a physical therapist; Dr. Todd Drury (Dr. Drury), an orthopaedic surgeon; Dr. Babson Fresh (Dr. Fresh), a neurosurgeon; and Dr. Troy Vaughn (Dr. Vaughn), a neurosurgeon. Pannell contends that the medical records from these health care providers establish that, as a result of her December 3, 2003 automobile accident, she sustained a shoulder injury, neck injury, headaches, and a back injury ultimately requiring lumbar surgery. Defendants refute Pannell's assertions and contend "that the medical documentation and testimony demonstrates that there is no causal connection between the automobile accident of December 3, 2003 and the

2

majority of Pannell's post-accident medical conditions and treatment." Defendants further contend that Pannell had significant treatment prior to December 3, 2003 and that she was involved in two subsequent incidents in December of 2004, which precipitated the need for the lumbar surgery.

The oral reasons provided by the trial court indicate that the trial court found that Pannell's injuries and treatment were a "direct result of the [December 2003] accident." However, the trial court also found that there was "nothing in the record to reveal or indicate that the subsequent surgery obtained by plaintiff had any direct correlation to this auto accident." Thus, the trial court awarded Pannell medical specials of $9,083.96, which did not include the medical expenses incurred in connection with her lumbar surgery. The trial court also awarded $195,000.00 in general damages. For the reasons which follow, we find the general damage award to be an abuse of the trial court's discretion.

It is clear from the record of these proceedings that Pannell had a long history of back problems since 1979 for which she sought active medical treatment with an orthopaedist, physical therapist, and chiropractor. Pannell testified that she had at least one, maybe two, herniated discs and some degenerative changes in her back prior to the subject accident. She admits that "she has consistently had back problems up to the date of the [December 3, 2003] accident and afterwards." These assertions are all corroborated by the medical records and the testimony of the health care providers.

In order to review the general damage award of the trial court, we must review the injuries sustained by Pannell, and the nature and duration of the medical treatment resulting therefrom. As set forth above, several health care providers rendered

3

treatment to Pannell both before and after the subject accident. This court has reviewed the extensive medical records and deposition testimony in evidence in these proceedings. The following synopsis of Pannell's medical treatment, both before and after the subject accident, is germane to the issue which this court is called upon to review.

The first medical treatment received by Pannell following the subject accident was with Dr. Strickland, a chiropractor, on December 4, 2003. On this initial visit, Pannell complained of pain in her back, neck, and shoulders. She gave a history to Dr. Strickland of eighteen years of back pain. Dr. Strickland's records document that Pannell experienced continued improvement over the course of her treatment. Moreover, these records do not document any radicular complaints. Pannell was treated by Dr. Strickland from December 4, 2003 through March 12, 2004. She did not return to see Dr. Strickland again until June 7, 2004, at which time her only complaint was that of shoulder pain. Pannell last saw Dr. Strickland on July 1, 2004.

Shortly after the accident at issue, Pannell traveled to Georgia to visit her family for the holidays. On December 22, 2003, while in Georgia, she saw Mr. Boers, a physical therapist, with whom she had treated extensively in the past for back, shoulder, and neck pain.[1] On that visit, Mr. Boers's medical records make reference to her rear-end collision and that Pannell complained of pain in her back, neck, shoulder and leg. The medical records from Mr. Boers, as well as his deposition testimony, further reveal that Pannell returned to see him in August of 2004, approximately eight months after the subject automobile accident. However,

---

[1]Mr. Boers testified that his charts did not go back further than August 1999, but that he had treated Pannell prior to that time. This was consistent with Pannell's testimony that she had begun treating with Mr. Boers as early as 1996. Regarding her past medical history, Mr. Boers also confirmed that in 1999 Pannell had treated with him for a herniated lumbar disc.

4

on that visit, there was no mention of the December 2003 accident. To the contrary, Pannell related chronic shoulder and back pain beginning in 1994. Additionally, she did not inform Mr. Boers of any radicular pain on this visit.

Pannell had also been treating with Dr. Foret, an internist, who had been her primary care physician since January 2003. Dr. Foret was aware of her long-standing history of back problems. Pannell first saw Dr. Foret following the subject accident on January 21, 2004, complaining of shoulder, neck, and back pain. Pannell did not have any radicular complaints at that time. Dr. Foret referred her to Mr. Miller for physical therapy. Pannell returned to Dr. Foret on March 2, 2004, again without any radicular complaints. On subsequent visits in April, May, June, August, and October of 2004, Pannell did not voice any complaints of back pain to Dr. Foret, nor did he document that she was taking any medications for back or neck pain during this time. It was not until December 14, 2004 that Pannell returned to see Dr. Foret complaining of back pain. Notably, on this visit, she provided an additional history of having been at the Cincinnati airport and lifting luggage which caused injury to her back. She also informed Dr. Foret that just days prior to her visit, she had felt a sudden pain in her back while reaching to close her car door. Pannell further stated that on December 13, 2004, she had numbness in her big toe and severe pain in her back with radicular symptoms. Therefore, the first occasion documented by Dr. Foret of Pannell experiencing any radicular symptoms was one year following the subject accident. Dr. Foret ordered an MRI which revealed a ruptured disc at L4-L5 and referred her to Dr. Fresh, a neurosurgeon. Dr. Foret did not see Pannell again until March 3, 2005, which was after her surgery and which was her final visit with him.

Pannell also underwent physical therapy with Mr. Miller on more than one

5

occasion over the course of her treatment. Mr. Miller's records document consistent physical therapy from December 2003 through February 2004. On February 18, 2004, Mr. Miller's records note that Pannell was "much improved [and] very pleased [with her] present state." She did not return to physical therapy until November 2004, following a referral from Dr. Drury who was treating her for shoulder complaints. Pannell attended physical therapy on three occasions in November 2004, and then "no showed" for all of her December 2004 appointments. Pannell did not return for physical therapy with Mr. Miller until February 11, 2005, which was after her lumbar surgery. Notably, only then did Pannell relate to Mr. Miller that she experienced radicular symptoms beginning in November or December of 2004.

Pannell first saw Dr. Drury, an orthopedic surgeon, on November 10, 2004, for right shoulder pain. She related a history of the December 2003 automobile accident with resulting soreness. Pannell complained that the shoulder pain had become worse in the five or six months prior to the visit. She did not complain of neck or back pain. Following an MRI of her right shoulder, Dr. Drury's diagnosis of Pannell's condition was tendonitis of the right shoulder. Dr. Drury found no evidence of tendon tear. She was given a steroid injection in her right shoulder on her last visit with Dr. Drury on November 17, 2004. She was again referred to Mr. Miller for physical therapy. Pannell was to return for follow-up with Dr. Drury in four or five weeks but she did not do so.

Pannell was also treated by Dr. Fresh, a neurosurgeon, first on December 16, 2004. At that time she had back and leg pain with radicular pain into her right leg, and numbness in her foot and leg. Dr. Fresh's records reveal that, on her initial visit, Pannell provided a history of disc problems, but the history did not include the

6

December 3, 2003 automobile accident. In Dr. Fresh's opinion, Pannell had a herniated disc at L4-5 on the right with severe L-5 radiculopathy on the right. Dr. Fresh ordered a selective nerve root block, and she returned to see him in January of 2005, when he referred her to his partner, Dr. Vaughn, also a neurosurgeon.

Dr. Vaughn confirmed that the history Pannell gave to Dr. Fresh did not reference the December 2003 automobile accident. He also testified that Pannell, herself, related the onset of complaints, which led to her subsequent lumbar surgery, to the December 2004 incident at the airport. Dr. Vaughn also confirmed that the MRI revealed multi-level disc degeneration and disc herniation at L4-5. Dr. Vaughn performed a lumbar discectomy on Pannell at L4-5 on January 11, 2005.

It is clear from the record that Pannell had pre-existing disc herniation which ultimately required surgery. Thus, the underlying inquiry for this court is one of causation. If the injury sustained by Pannell as a result of the December 2003 automobile accident was the legal cause of the lumbar surgery, the general damage award may not be considered excessive. If, on the other hand, Pannell's lumbar surgery in January of 2005 was not causally related to the December 2003 automobile accident, the general damage award by the trial court for the particular injury sustained by this particular plaintiff is an abuse of the trial court's discretion. Based upon our review of the evidence, we find that the opinions of the health care providers failed to establish that the December 2003 automobile accident was the legal cause of her subsequent discectomy at L4-5.

Dr. Foret gave the following explanation when asked his opinion on causation:

I think, in my opinion, that the disc injury, in my opinion, more likely than not was not related to her car accident. However, her chronic back problems were exacerbated by this accident, and I think it's impossible to say which of any of these, pulling on the luggage or whatever, it's

7

impossible to say which of these events have made her back slowly worse. However, I do think it's worse and I do think that that car accident certainly did not help in any way and may have actually hurt her in terms of her daily back pain, stiffness, etcetera."

Additionally, in Dr. Fresh's opinion, it was the December 2004 airport incident that fully herniated Pannell's lumbar disc, and it was that incident that precipitated the need for surgery. Notably, Dr. Vaughn testified that he didn't "know anything about a motor vehicle accident, so [he did not] know if this would be related to her injury or not." Therefore, Dr. Vaughn was also unable to relate his treatment to the December 2003 automobile accident. Another expert to render an opinion on the issue of causation was Dr. Anthony Ioppolo (Dr. Ioppolo), a neurosurgeon, who concluded that the December 2004 incident at the airport caused the large lumbar disc rupture which necessitated the surgery. He also opined that "[i]f this large ruptured disc had been caused by the motor vehicle accident in December 2003 the patient would have had symptoms prior to one year later." Additionally, "the temporal relationship between the December 2004 incident and the development of the foot drop from nerve root compression certainly makes it more probably than not, in [my] opinion, that this is the incident that caused the large disc rupture and the need for surgical intervention."

Finally, with respect to Pannell's alleged shoulder injury, Dr. Drury testified that since he did not see Pannell until nearly a year post accident, it is very difficult for him to tell whether the accident caused her tendonitis. It was his testimony that he did not "see how with any reasonable certainty [he] could tell . . . that the tendonitis she has is related to her accident."

The evidence in the record supports the medical finding that Pannell suffered soft tissue injuries to her neck and shoulder and an aggravation of pre-existing low

8

back problems as a result of the December 2003 automobile accident. She underwent chiropractic treatment and physical therapy for four months, at which time she had returned to baseline. She did not return for further treatment until June 7, 2004, when she treated for shoulder pain for one month. Pannell was treated for her shoulder on only two more occasions in November of 2004 and did not return to the physician. Therefore, the injury to her shoulder, which was soft tissue in nature, was one year in duration. Additionally, the soft tissue injury to Pannell's neck had resolved in two to three months.

In order for the December 2003 automobile accident to be a cause-in-fact of Pannell's lumbar surgery, that accident must be a substantial factor in bringing about the lumbar surgery. *Perkins v. Entergy Corp.*, 00-1372, 00-1387, 00-1440 (La. 3/23/01), 782 So.2d 606 (citing *Boykin v. Louisiana Transit Co. Inc.*, 96-1932 (La. 3/4/98), 707 So.2d 1225; *Jones v. Hawkins*, 98-1259, 98-1288 (La. 3/19/99), 731 So.2d 216; *Rick v. State, Dep't of Transp. & Dev.*, 93-1776, 93-1784 (La. 1/14/94), 630 So.2d 1271; *Dixie Drive It Yourself System v. Am. Beverage Co.*, 242 La. 471, 137 So.2d 298 (1962)). Given Pannell's medical history of radicular complaints pre-dating the subject accident, her lack of radicular complaints for a significant period of time following the accident, the two incidents in 2004, the temporal relationship between the 2004 incidents, her radiculopathy, her foot drop, and the expert opinions on causation, we find that the December 2003 automobile accident was not a substantial factor in bringing about Pannell's lumbar surgery. It is evident that the trial court did not feel that the December 2003 automobile accident was the legal cause of Pannell's lumbar surgery when it failed to award Pannell the medical expenses for the surgery and failed to award anything on her lost wage claim.

9

Consequently, we find that the trial court's award of $195,000.00 in general damages for soft tissue injuries to Pannell's neck and shoulder with an aggravation of a pre-existing low back condition to be an abuse of discretion.

After reviewing prior awards in similar cases, we find $90,000.00 to be the highest reasonable award for Pannell's injuries. *See Dugas v. Derouen*, 01-1397 (La.App. 3 Cir. 7/3/02), 824 So.2d 475, *writ denied*, 02-2131 (La. 11/15/02), 829 So.2d 426 (general damages of $70,000.00 awarded for an aggravation of a pre-existing disc condition and TMJ condition, broken rib and cervical strain)*; Boyette v. United Services Auto. Ass'n.*, 99-1755 (La.App. 3 Cir. 4/12/00), 760 So.2d 492, *rev'd on other grounds,* 00-1918 (La. 4/3/01), 783 So.2d 1276 ($50,000.00 in general damages affirmed for an aggravation of prior back and neck injury with two cervical fusions, depression and residual pain); *Guidry v. Millers Cas. Ins. Co.*, 01-01 (La.App. 1 Cir. 6/21/02), 822 So.2d 675 ($50,000.00 awarded for an aggravation of a degenerative lumbar condition not requiring surgery but resulting in continuing lifetime symptoms); *Rabalais v. Mason*, 01-925 (La.App. 5 Cir. 1/15/02), 807 So.2d 983*, writ denied*, 02-490 (La. 4/19/02), 813 So.2d 1093 ($50,000.00 in general damages awarded for permanent aggravation of a pre-existing degenerative arthritic condition); *See also Brooks v. Henson Fashion Floors, Inc.*, 26,378 (La.App. 2 Cir. 12/7/94), 647 So.2d 440 ($20,000.00 in general damages for tendonitis of the shoulder with continued pain for twenty months); *Talamo v. Shad*, 619 So.2d 699 (La.App. 4 Cir.), *writ denied*, 625 So.2d 175 (La.1993) (general damage award of $15,000 to a 23 year old woman who would suffer flare-ups of biceps tendinitis for the rest of her life); *Mayeux v. Selle*, 99-498 (La.App. 5 Cir. 11/10/99), 747 So.2d 1174 (general damage award of $22,500 for a shoulder injury of fifteen months and

10

residual complaints).

## **DECREE**

For the foregoing reasons, we affirm the judgment of the trial court awarding Andrea Pannell general damages, but we amend the amount awarded by reducing it from $195,000.00 to $90,000.00.

Costs of this appeal are to be divided equally between the parties.

**AFFIRMED AS AMENDED.**