STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

10-1290

JOHN CLYDE DEVILLE, SR.

VERSUS

WARREN W. FREY, ET AL.

**********
APPEAL FROM THE
TWENTY-SEVENTH JUDICIAL DISTRICT COURT
PARISH OF ST. LANDRY, NO. 09-C-1341-A
HONORABLE JAMES P. DOHERTY, DISTRICT JUDGE
**********

SYLVIA R. COOKS
JUDGE

**********

Court composed of Ulysses Gene Thibodeaux, Chief Judge, Sylvia R. Cooks, and
Elizabeth A. Pickett, Judges.

**JURY VERDICT REVERSED; JUDGMENT RENDERED**.

Pickett, J., concurs and assigns reasons.

Howard C. Dejean
111 North Court Street
Opelousas, LA 70570
(337) 942-1149
COUNSEL FOR PLAINTIFF/APPELLANT:
John Clyde Deville, Sr.

Ian A. MacDonald
Jones Walker
600 Jefferson St., Suite 1600
P.O. Drawer 3408
Lafayette, LA 70502
(337) 262-9000
COUNSEL FOR DEFENDANTS/APPELLEES:
Progressive Security Ins. Co., Warren Frey and James Savoy

**COOKS, Judge.**

On January 18, 2007, John Clyde Deville was involved in an automobile accident. Mr. Deville's vehicle collided with a mail truck that ran a red light, an impact Mr. Deville described as significant. His truck required towing from the accident scene. Mr. Deville went from the scene of the accident to the emergency room complaining of neck, shoulder, and back pain. He was diagnosed with having both cervical and lumbar disc herniations.

Mr. Deville was treated by his family physician, Dr. Michael Burnell, who prescribed pain medication and sent him to physical therapy. As this produced little success, Dr. Burnell referred him to Dr. G. Raymond Williams, an orthopedic surgeon. Dr. Williams initially tried conservative treatment, which did not provide any significant improvement. Dr. Williams then advised Mr. Deville that the next step was to undergo a series of epidural steroid injections. Dr. Williams informed Mr. Deville that if the injections did not produce a level of pain he could live with, lumbar surgery would be required. The injections began on April 8, 2008. According to Mr. Deville, it was explained to him by Dr. Williams that the first round of injections usually would not provide significant relief, but the second round of injections could reasonably be expected to produce relief. Mr. Deville stated the first round of injections produced only a few days of relief.

The second round of injections was administered on May 1, 2008, and Mr, Deville testified it produced a tolerable reduction in pain. At trial, Mr. Deville testified even seven weeks after the second round of injections he was feeling "fairly well."

On June 22, 2008, Mr. Deville was involved in another vehicular accident. On that date Mr. Deville's vehicle was sideswiped by a vehicle driven by James V. Savoy, who was operating the vehicle while in the employ of Warren Frey, who also owned the vehicle. According to Mr. Deville the impact to his vehicle was not extreme, but he was forced from his lane of travel onto the adjacent sidewalk. As he attempted to maintain control of his vehicle and reentered the road again, he was struck a second time. Mr. Deville later testified the jerking, twisting, and tensing he was forced to undergo during this collision left an increased tightness and pain in his back. Mr. Deville initially denied any injury at the scene of the accident, believing the tightness in his back would go away. He chose not to seek medical treatment that day, explaining that he had a large amount of processed meat in his vehicle that needed to be refrigerated quickly.

Mr. Deville did not seek any medical treatment until approximately two weeks later when he saw Dr. Williams for a previously scheduled appointment. Mr. Deville informed Dr. Williams of the accident. He later testified he had been feeling significant relief prior to the June 22, 2008 accident, but the severe pain returned after the accident. Mr. Deville stated he suffered severe lower lumbar pain with radiating numbness and pain into his lower extremities after the second accident. Mr. Deville underwent his third round of steroid injections as scheduled on August 12, 2008. Unlike the second round of injections, Mr. Deville stated he did not receive even short-term relief from his pain.

Because the steroid injections failed to control Mr. Deville's pain, surgery was discussed and recommended by Dr. Williams. On June 10, 2009, lumbar surgery was performed on Mr. Deville. He testified it produced mixed results, alleviating the

radiating symptoms into the lower extremities, but failing to alleviate the localized pain in his lumbar spine.

Mr. Deville filed a petition for damages as a result of the June 22, 2008 accident, naming as defendants, Warren Frey, James Savoy, and Progressive Security Insurance Company, who issued a policy of insurance on the vehicle to Frey. Prior to trial, it was stipulated that Defendants were at fault, and any potential recovery for Mr. Deville would be no more than the limits of the Progressive policy, $300,000. During the jury trial on the matter, Mr. Deville acknowledged it was difficult to quantify the difference in pain, but statedthere was definitely a deterioration of his condition immediately after the June 22, 2008 accident. Defendants attempted on cross-examination of Mr. Deville to question him concerning the previous accident, subsequent medical treatment, and any claims and settlements originating from that accident. Counsel for Mr. Deville objected to this line of testimony. Defendants presented the trial judge with this Court's opinion in *Alexander v. Tate*, 09-844 (La.App. 3 Cir. 2/3/10), 30 So.3d 1122, which allowed questioning regarding a prior settlement in an accident case. The trial judge agreed and Mr. Deville was required to testify that he received $450,000 in the settlement arising from the first accident. The matter was eventually submitted to the jury, which found Mr. Deville was not injured as a result of the June 22, 2008 accident.

Mr. Deville moved for a Judgment Notwithstanding the Verdict (JNOV) and, alternatively for a New Trial. Both these motions were denied by the trial judge. This appeal followed, wherein Mr. Deville asserts the following assignments of error:

> 1. The trial court erred in ruling that the jurisprudence required the admission of evidence concerning a settlement of the claim against the tortfeasors in the first accident and the amount of that settlement, and in allowing said evidence to be presented to the jury; and

2.     In failing to grant JNOV or New Trial on the grounds of the jury's abuse of its discretion in failing to make an award of damages for the aggravation of the injuries suffered in the accident of June 22, 2008.

## ANALYSIS

### I.     *Admission of Prior Settlement Figure to Jury.*

During cross-examination of Mr. Deville, Defendants began to question him as to how much money he received from the prior tortfeasor in settlement of his claim which arose from the first accident. Counsel for Mr. Deville objected to this line of questioning. During a side bar at the bench, the trial court asked Defendants what authority they relied upon for such questioning. Defendants cited *Alexander*, 30 So.3d 1122, for their position that this line of questioning was admissible. The trial judge agreed and stated he was bound by the decision in *Alexander* to allow Mr. Deville to be questioned about the settlement, and the amount he received.

At issue in this case is the interplay between La.Code Evid. Arts. 408 and 413, which both limit the admissibility at trial of evidence pertaining to settlement agreements. Louisiana Code of Evidence article 408(A) provides, in pertinent part, as follows:

> In a civil case, evidence of (1) furnishing or offering or promising to furnish, or (2) accepting or offering or promising to accept, anything of value in compromising or attempting to compromise a claim which was disputed as to either validity or amount, is not admissible to prove liability for or invalidity of the claim or its amount. Evidence of conduct or statements made in compromise negotiations is likewise not admissible.

Louisiana Code of Evidence Article 413 provides:

> Any amount paid in settlement or by tender shall not be admitted into evidence unless the failure to make a settlement or tender is an issue in the case.

As noted, the trial court believed it was compelled by this court's decision in

*Alexander* to allow the jury to learn the amount of the prior settlement. We elect not to follow the holding in *Alexander*, considering the facts *in this case*.

We note with interest the comments the authors of the "handbook on Louisiana Evidence Law" made regarding Article 413. They stated in part:

> This Article was particularly designed to protect a plaintiff in a personal injury suit from the introduction of evidence that would inform the jury of the amount plaintiff received in settlement from other alleged tortfeasors, or the amount received by other claimants in settlement of their claims against the defendant, when the purpose of such evidence is to minimize the value of plaintiff's claim, or suggests that he has already received adequate compensation.

GEORGE W. PUGH, ROBERT FORCE, GERALD A. RAULT, JR., AND KERRY TRICHE, HANDBOOK ON LOUISIANA EVIDENCE LAW, 410 (2008 ed.). The authors then noted that Article 413 "seemingly mak[es] evidence of settlements . . . inadmissible for any purpose." Despite this, the authors commented:

> It is believed that [Article 413] should not be given such broad scope, and where the amount paid in settlement or tender has a relevance independent of its tacitly forbidden use, it should be held admissible, subject, of course, to the balancing test of Article 403.

*Id.*

Although Article 413's language in plain English recites that settlement awards "shall not" be admissible except in the limited instance where the failure to make a settlement is an issue in the case, the noted comments have apparently spawned cases employing the balancing test found in La.Code Evid. Art. 403, generally applicable to the admissibility of evidence.[1] We are satisfied that the rules of statutory

---

[1] Louisiana Code of Evidence article 403 states:

> Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or waste of time.

construction and interpretation require us to apply the more specific language found in article 413.

There is little question that disclosure of a settlement amount for the purpose of proving or disproving liability may improperly influence the jury to base its finding of fault on the settlement. It is the reason La.Code Evid. art. 413 exists. While the impact in the second accident was not severe, the undisputed facts indicate Mr. Deville's vehicle was struck by the vehicle driven by Mr. Savoy, forced from his lane of travel, over the curb, onto the adjacent sidewalk. While fighting to maintain control of his vehicle, he reentered the road again and was struck a second time. It is difficult to reconcile the jury's verdict that Mr. Deville was not injured as a result of the accident, other than to conclude the jury believed he had already received appropriate compensation from the prior settlement. We cannot rule out the real probability that the prior settlement amount unfairly prejudiced the verdict in this case. Evidence of the prior accident, injuries suffered therein, and resultant medical treatment could have been introduced without mentioning the settlement.[2] Therefore, we conclude the trial court legally erred in allowing the settlement amount to be introduced to the jury under the circumstances presented in this case.

Because we find the trial court committed legal error that interdicted the fact-finding process and because we find the record is otherwise complete, we must conduct a *de novo* review of the record to determine whether there is liability and the amount of damages, if any, that should be awarded. *Ferrell v. Fireman's Fund Ins.*

---

[2] We note that Mr. Deville's medical difficulties following the first accident were discussed in great detail. Mr. Deville was forthright in testifying he sustained cervical and lumbar herniations in the first accident. He further testified he underwent two lumbar steroid injections and was scheduled for a third prior to the accident at issue. He also candidly acknowledged it was difficult to quantify the effect the second accident had on his back and neck problems, though he was steadfast that it did cause him a definite aggravation of his symptoms.

*Co.*, 94-1252 (La. 2/20/95), 650 So.2d 742.

## I. *Injury from July 8, 2008 Accident.*

The evidence clearly established Mr. Deville was involved in an accident where his vehicle was stuck by Defendants' vehicle, forced up the curbing of the street, reentered the road and was struck a second time. Mr. Deville testified he suffered aggravation to his pre-existing injuries as a result of this accident. While he admitted he could not quantify the aggravation of his pre-existing injury, he maintained there was a worsening of his condition. He testified he did not believe he would have required surgery without the second accident. Dr. Williams testified surgery was previously mentioned, but noted it was broached in the event that all conservative measures failed. At the time of the second accident, there was still a hope that the steroid injections would render surgery unnecessary. Dr. Williams also noted the MRI taken after the second accident, although not appreciably different from the previous MRI, showed a slight magnification of the disc herniations. Lastly, following the second accident, Mr. Deville complained of shoulder pain for the first time.

Our review of the record reveals the evidence in this case is sufficient to conclude more probably than not that Mr. Deville suffered injuries as a result of the June 8, 2008 accident. Therefore, we must reverse the jury verdict and render judgment in favor of Mr. Deville finding the accident caused him harm. Having a complete record before us for review, we will now assess damages.

## II. *Damages.*

The record established that Mr. Deville sustained cervical and lumbar herniations as a result of the first accident. Conservative treatment was unsuccessful,

and Dr. Williams began steroid injections as a possible alternative to lumbar surgery. He hoped that the injections would provide time for convalescence to the tissue in the area of the injury that would reduce the inflammation and allow the nerve root irritation to subside and provide lasting relief. The first injection produced little relief, but according to Mr. Deville the second injection produced some significant relief. Prior to the third injection, the second accident occurred.

An MRI was performed after the second accident, and Dr. Williams stated there wasn't "much difference," but there was a "somewhat magnification or enlargement" of the disc at the L5-S1 and L4-5 levels. Dr. Williams also noted for the first time Mr. Deville was complaining of right shoulder pain. Dr. Williams chose to proceed with the scheduled third steroid injection. Mr. Deville testified he did not gain significant relief, and his back never returned to even its post-second injection level. Dr. Williams then concluded that surgery was unavoidable.

Surgery was performed on June 10, 2009. Dr. Williams felt the surgery was generally successful, alleviating the radiating symptoms into the lower extremities. He did note the surgery had little success in reducing the localized pain in Mr. Deville's lumbar spine. Mr. Deville will suffer permanent physical restrictions for the remainder of his life, including lifting restrictions and the need to avoid repetitive bending, twisting, or lifting objects in excess of twenty pounds.

Dr. Williams was questioned at length concerning the cause of Mr. Deville's injuries and gave the following testimony:

Q. Do you attribute at least part of this injury to his January 18th, 2007 accident?

A. Yes, sir.

Q. All right. For the condition of his back after the June 22nd, 2008,

accident, do you attribute that condition to both accidents?

A.    Say that again.  I'm sorry.

Q.    The condition of his back since the June 22nd, 2008, accident, do you attribute that to both accidents concurrently?

A.    Yes, sir.

Q.    All right, so there would be some component of each accident in his lower back condition since June 22nd of '08; is that correct?

A.    That's correct, yes, sir.

Q.    Is it difficult to determine what the component of that – what each component of that is?

A.    Yeah, it's hard for me to quantify like a certain percentage what is based on what per accident.

Q.    Is it likely that the June 22nd, 2008, accident set back his condition and interrupted his improvement?

A.    Yes, sir.

Dr. Williams also noted it is common for a second injury to interrupt the healing and retard any progress made; and according to Mr. Deville's history and physical examination the doctor believed that is what occurred in this case.  On cross-examination, Dr. Williams was specifically asked if the lower back surgery performed on Mr. Deville was caused by the January18, 2007 accident.  He responded: "[t]he pathology originally, yes, sir.  It could have been exacerbated by the second."

After a thorough review of the record, the evidence reveals that, due to the June 18, 2008 accident, Mr. Deville suffered an exacerbation of his lumbar and cervical pain and the new onset of shoulder pain.  Although the underlying disc problems which led to Mr. Deville's lumbar surgery were present prior to the second accident, Dr. Williams' testimony was that, as of the time of the second accident,  surgery was

not yet planned and there was at least some hope it could be avoided.

Mr. Deville suggests this Court's award in *Smoot v. Hernandez*, 08-1121 (La.App. 3 Cir. 3/4/09), 6 So.3d 352, is indicative of the amount of general damages we should render in this case.[3] In *Smoot*, the plaintiff was involved in an accident, and suffered a two-level disc herniation for which she underwent lumbar fusion surgery. The jury awarded slightly over $100,000 in medical expenses to the plaintiff, but did not make any award of general damages. The trial court granted JNOV and awarded the plaintiff $250,000 in general damages. Defendants appealed the amount of damages awarded, citing pre-existing back complaints from the plaintiff. In affirming the general damage award of $250,000 as not an abuse of the trial court's vast discretion, we noted the evidence established the herniated discs were caused by the subject accident, notwithstanding any pre-existing complaints by the plaintiff. Although, *Smoot* did involve an aggravation of pre-existing injuries, the court specifically found the herniated discs necessitating surgery were caused by the subject accident. In this case, the events necessitating Mr. Deville's surgery are not as clear.

Our review of the jurisprudence revealed the following cases which we find more helpful in our assessment of damages. *See Jones v. Martinez*, 07-24 (La.App. 3 Cir. 10/24/07), 967 So.2d 1205 ($125,000 in general damages for injuries sustained in an accident which aggravated a pre-existing injury, hastening the degeneration of her back condition and requiring back surgery); *Pannell v. Encompass Ins. Co.*, 06-1601 (La.App. 3 Cir. 5/2/07), 956 So.2d 152 ($90,000.00 in general damages awarded

---

[3] Plaintiff also cited the general damage award in *Harris v. United Agents Insurance Co. of La.*, 00-1314 (La.App. 3 Cir. 5/2/01), 784 So.2d 132, *writ denied*, 01-1591 (La. 9/14/01), 796 So.2d 683, as indicative of the amount of damages we should award. We find *Harris* unpersuasive, as it did not involve an aggravation of prior injuries.

for injuries to a motorist's neck and shoulder with an aggravation of a pre-existing lower back condition where motorist had one, maybe two herniated discs); *Guidry v. Millers Cas. Ins. Co.*, 01-01 (La.App. 1 Cir. 6/21/02), 822 So.2d 675 ($50,000.00 awarded for an aggravation of a degenerative lumbar condition not requiring surgery but resulting in continuing lifetime symptoms).

We also cite the following cases where awards were made for shoulder injuries similar to that suffered by Mr. Deville. *See Brooks v. Henson Fashion Floors, Inc.*, 26,378 (La.App. 2 Cir. 12/7/94), 647 So.2d 440 ($20,000.00 in general damages for tendonitis of the shoulder with continued pain for twenty months); *Mayeux v. Selle*, 99-498 (La.App. 5 Cir. 11/10/99), 747 So.2d 1174 (general damage award of $22,500 for a shoulder injury of fifteen months and residual complaints).

After reviewing the prior cases, we find an appropriate award of general damages for the aggravation of Mr. Deville's pre-existing back injury along with the injury to his shoulder is $100,000.

Mr. Deville also asserts the medical expenses he endured after the June 22, 2008 accident were $93,255.25. Our review of the record establishes that the majority of this amount was associated with the back surgery. As there was clear testimony from Dr. Williams that the pathology of Mr. Deville's back problems which necessitated the surgery derived from the first accident, we do not find it appropriate to award him the total of the medical expenses claimed. We will award him $46,627.63 in medical expenses.

## DECREE

For the foregoing reasons, we reverse the jury verdict and render judgment finding Mr. Deville suffered injuries as a result of the June 22, 2008 accident. After

-11-

a *de novo* review of the record, we award $100,000 in general damages and $46,627.63 in medical expenses. All costs of this appeal are assessed against Defendants-Appellants.

**JURY VERDICT REVERSED; JUDGMENT RENDERED**.

STATE OF LOUISIANA

COURT OF APPEAL, THIRD CIRCUIT

10-1290

JOHN CLYDE DEVILLE, SR.

VERSUS

WARREN W. FREY, ET AL.

**PICKETT, Judge.**

Judge Cooks declines to follow *Alexander v. Tate*, 09-844 (La.App. 3 Cir. 2/3/10), 30 So.3d 1122, and determines that under La.Code Evid. arts. 408 and 413, the trial court's requiring plaintiff to testify as to the settlement of his claims arising from his first accident was error. I agree with this conclusion but write separately to point out that *Alexander* is factually distinguishable from this case. As noted in the last line of the comments to Article 413 quoted above, Article 413 prohibits the use of settlement information when it is sought to be used "to minimize the value of the plaintiff's claim" or to suggest "that he has already received adequate compensation" which is exactly the situation presented here. The opposite situation was present in *Alexander*. There the plaintiff was injured in an accident that occurred *after* the accident that was the subject of the litigation; the plaintiff here was injured *before* the accident that is the subject of this litigation. In *Alexander*, the plaintiff, not the defendant, sought to use the amount of his settlement for his claims arising from the subsequent accident to show his injuries in that accident were minimal compared to the injuries he suffered in the first accident.